## T. W. Abbott *v.* State.

[63 South. 667.]

1. CONSTITUTIONAL LAW. *Delegation of legislative power. Animals. Laws* 1908, *chapter* 106, *sections* 3 *and* 4. *Penal statutes. Strict constructions. Offenses. Failure to dip cattle.*

> Laws of 1908, chapter 106, section 3 providing that the Live-stock Sanitary Board shall have plenary power to deal with all contageous and infectious diseases of animals and to make, promulgate and enforce such rules and regulations as in the judgment of the board may be necessary to control, eradicate and prevent the introduction and spread of tick fever, etc., and to provide penalties for violations of such rules and regulations thereafter to be adopted, is not invalid as a delegation of legislative functions.

2. STATUTE. *Construction.*

> Courts must look to the law itself for the legislative intent, and it is not within the province of the court to write the law.

3. PENAL STATUTES. *Strict construction. Laws* 1908, *chapter* 106, *sections* 3 *and* 4.

Laws 1908, chapter 106, sections 3 and 4, giving plenary power to the State Live-stock Sanitary Board with respect to contagious animal diseases and imposing penalties for violation of the act are highly penal and must be strictly construed.

4. SAME.

Section 4 of the act penalizes violation of the "act itself," and there is nothing in the act requiring persons to dip their cattle, therefore a party charged with a failure and refusal to dip his cattle in accordance with the rules and regulations of the state's Live Stock Board, cannot be convicted under this act.

APPEAL from the circuit court of Jefferson county.

HON. E. E. BROWN, Judge.

T. W. Abbott was convicted of violating the rules of the live stock sanitary board and appeals.

The facts are fully stated in the opinion of the court.

*L. L. Posey,* for appellant.

The court should have sustained the demurrer to the affidavit because it charges no crime against the law; disobedience to the rules and regulations of the Mississippi Live Stock Board is the only charge, and these rules never having been incorporated into the laws and made a part thereof are not the law, and it follows that a conviction cannot be sustained as no law has been violated.

The evidence of the state fails to show that Jefferson county was ever quarantined by the Mississippi Live Stock Board or the state live stock sanitary board, chapter 106 (H. B. No. 218), and section 3 of said chapter provides: "That said board shall have plenary power to deal with all contagious and infectious diseases of animals as in the opinion of the board may be prevented, controlled or eradicated, and with full power to make, promulgate and enforce such rules and regulations as in the judgment of the board may be necessary to control, eradicate and prevent the introduction and spread of the

Texas or fever-carrying tick, Boophilus annulatus, and all other diseases of animals in the state.''

This conferred no authority upon the board of supervisors to quarantine any county or any part thereof. Therefore the attempted quarantine put in force under the regulations of an order of the board of supervisors is ineffective, the board having no authority to quarantine under the section just cited, and for this reason the charge in the affidavit that the rules and regulations of the state live stock sanitary board have been violated is fatally defective and the demurrer to the affidavit should have been sustained. For the above reasons this instruction asked for by the defendant and refused by the court should have been given: ''The court instructs the jury for the defendant that the state is not asking a conviction upon a statute in this case, but upon a regulation of the board of the state live stock association, and that every man charged of crime must be proven guilty of a violation of the law before a conviction can be had.''

The court, over the objection of the defendant, permitted the witness, Dr. Horstman, to read the laws, rules and regulations, etc., governing the control, etc., issued under the authority conferred by the Acts of the legislature of 1908 and 1910 upon the Mississippi Live Stock Sanitary Board. A witness for the state, one possibly of strong prejudice, should not be permitted to read the laws to the jury. This is conferring upon the witness the authority which rightfully belongs to the bench, it being the duty of the court and the court alone, to instruct the jury as to what the law is in any and all matters. The court afterwards tried to cure the reading of the laws and regulations of the board to the jury by eliminating section 3, above referred to, but at this point admitted the regulations which constitute the document under which the conviction was asked, hence the effect on the jury was the same, and the violation of the defendant's right was just as great.

The proceeding of this case shows nothing but the conviction of a man under the rules of the Mississippi Live Stock Sanitary Board without said board having anything whatever to do with the quarantining of Jefferson county, either directly or indirectly, no authority ever having been given the board of supervisors to take the initiative in the matter as shown by the records of this case. The Mississippi Live Stock Sanitary Board is domiciled at Jackson, Mississippi, where it transacts all its affairs, passes all orders and regulations. No order or regulation by said board has been shown in this case which quarantined Jefferson county, and hence no regulation of same has been violated. This being true, I think this case should be reversed.

*Geo. H. Ethridge,* assistant attorney-general, for the state.

This prosecution is founded upon chapter 106 of the Laws of 1908, empowering the state live stock sanitary board to deal with infectious diseases of animals, and provide quarantine and to promulgate and enforce such rules and regulations as may be necessary to control, eradicate and prevent the introduction and spread of the Texas or tick fever and fever carrying tick and all other diseases of animals.

Section 3, of the act, confers plenary power on the state live stock sanitary board to make all rules and regulations proper and necessary and by section 6 they have full authority to establish and maintain the quarantine lines and to appoint inspectors and to delegate authority to inspectors to enter premises and inspect and disinfect live stock and premises, and enforce quarantine including counties, farms, pens and stables. Sections 4 and 5 impose penalties for violation of the provision of the acts, or interfering with any duly appointed officer of the board, and for driving, conveying, or transporting from any other state or territory into this state or moving with-

in this state, animals known to be infected with the infection of the contagious or communicable disease contrary to the rules and regulations of the board.

Inasmuch as the powers of the state live stock sanitary board to formulate rules and regulations having the force of law and their power to enforce them in the courts is a question that has attracted so much public interest and is so important to have it determined by this court at the earliest possible time. I shall ask the court to go into the subject and consider it from every standpoint so that any defects that may be in the law may be dealt with by the legislature at the coming session.

The appellant's brief does not deal with the constitutional feature of the law but there are various suits either now pending in this court, or on the way to this court in which the constitutional feature will be involved, so that I shall discuss in this brief that feature as well as the technical questions arising in this case.

This is a question that affects a very large per cent of the people of the state, and under this enactment and under the rules and regulations of the live stock board, co-operating with the several counties and the United States Government, large sums of money have been expended and plans have been formulated and work undertaken in a great portion of the state. It, therefore, becomes highly important that the court, at the very outset, go fully into the question and decide every phase of the law and determine the precise scope of the live stock board's work and its powers under the act in question, so that the public interest may be taken care of should any additional legislation be needed.

I shall first discuss the questions raised by the appellant in his brief, and then discuss other phases that appear in the law, especially bearing on the power of the legislature to delegate to the state live stock sanitary board powers to make effective the legislative purpose of preventing the spread of Texas fever, and destroying and removing the cause of this disease.

The demurrer filed to the affidavit is sufficient on its face to bring in question the validity of the entire law, and would warrant the court in dealing with the whole scope and power of the act as requested in this brief. The appellant makes the point that the affidavit charges no crime against the law; that the only charge is the disobedience to the rules and regulations of the Mississippi Live Stock Board and that these rules having never been incorporated in the laws are not the law and that a conviction cannot be sustained because no law has been violated. He takes the position that the statute does not confer power to quarantine, and that the orders of the live stock sanitary board and of the board of supervisors are ineffective. The defendant, in the court below, asked the court to instruct the jury for the defendant that the state is not asking a conviction upon a statute in this case but upon a regulation of the board and that every man charged with crime must be proven guilty of a violation of law before a conviction can be had. The court refused to grant this instruction on the theory, no doubt, that the rules and regulations of the live stock sanitary board were merely administrative details of the chapter above referred to, the wide scope and purpose of the law being enacted by the legislature and the legislature conferring upon the live stock board full and plenary power to make such regulations and perform such acts as were necessary to carry out the legislative purpose. This phase will be reserved for later discussion.

The next proposition is that it is contended that the quarantine was ineffective because the live stock board had not declared the quarantine in Jefferson county. The rules and regulations are shown by the record to have been offered in evidence, and a copy of said rules and regulations is in the record and copy is made Exhibit "A" to this brief.

In regulation number 3 appearing on page 7 of the record, it is shown that Claiborne county was included in

the quarantine district. It is shown in the proof that a copy of these regulations were given to Mr. Abbott, and by a reading of these regulations, it could readily be seen that this territory was quarantined and that the appellant had due notice thereof and that having such notice, he wilfully disobeyed and disregarded these regulations. Furthermore, the minutes of the board of supervisors show that the board adopted these rules and regulations for the purpose of co-operating with the state live stock sanitary board and carrying out the purpose of the act. The board of supervisors was expressly authorized to co-operate with these boards by chapter 143 of the Laws of 1910, page 135. All the minutes of the board of supervisors show the proper appointment of inspectors and an undertaking by the board to make quarantine of the state live stock board effective in that county. Different questions arising in the record on the introduction of testimony and matters of that kind seem to be proper and there was not reversible error in any of the proceedings.

This precise question has not heretofore been presented in this state, but it has been passed upon in other courts and has been sustained as being constitutional and proper. Our own court has sustained laws similar in principle arising on various kinds of questions involving the delegation of legislative power. One of the most striking illustrations of this kind in our own state is the creation of a railroad commission and conferring upon it power of investigation and the adoption and making of rules and regulations governing common carriers of all kinds and prescribing duties, rates, etc.

This legislation was sustained in the case of *State.* v. *Farmers Loan & Trust Co.*, 62 Miss. ——, and upheld by the supreme court of the United States. The enactment here in reference to eradicating contagious diseases among cattle is an exercise of the police power of the state designed to promote the public health, and in its

very nature incapable of being administered by the legislature solely. Wherever the legisalture has any power to legislate, it may delegate with reference to the question by passing an act in general terms dealing with the subject-matter leaving to the board, or other body, discretion about the circumstances and conditions for its enforcement, and when the legislature passes an act of the kind involved in this suit conferring upon a board the power to make rules and regulations and establish quarantine, the rules and regulations so made by such board are as much a part of the law as the other part. *Ex parte Fritz,* 86 Miss. 222; *Barataria Canning Co.* v. *Ott,* 84 Miss. 737, s. c., 37 So. 121; *Ormond* v. *White,* 85 Miss. 276, s. c., 37 So. 834; 59 So. 921; *Board of Election Commissioners of Rankin County* v. *Davis,* 59 So. 811; *Marshall Field & Co.* v. *Clark, Collector,* 143 U. S. 649, 36 L. Ed. 310; *United States* v. *Grimoud,* 220 U. S. 506, 55 L. Ed. 563; *Bullfield* v. *Stranhan, Collector,* 192 U. S. 470, 48 L. Ed. 525.

In all of these cases, the supreme court of the United States holds that it does not violate the Constitution for Congress to authorize some other board, or person, to determine the conditions and details of administrative matters. The great growth of governmental matters in the past few years shows the necessity of leaving the minutia and details of the administration to a board or other officer.

The constitutionality of the law of the same kind as the one under review was sustained by the supreme court of Alabama in the case of *State* v. *McCarty,* 59 So. 543, in a very able and exhaustive opinion on the subject. *Bishop* v. *State,* 127 S. W. 698, s. c., 122 Tenn. 729.

In the case of *Snyder* v. *State,* 59 So. 44, the supreme court of Louisiana held that it was competent under their Constitution for the General Assembly to create a state board of health and authorize the board to promulgate a sanitary Code and make violations thereof a penal offense.

All of these cases show the necessity of leaving considerable latitude and discretion in an administrative board so that rules may be made to meet the local conditions as they may arise. All that is necessary is that the general scope and purpose of the law be enacted by the legislature and that specific authority be given the administrative board to make rules and regulations to meet local conditions and that the proper penalties be imposed by the legislature for violations of such rules and laws.

COOK, J., delivered the opinion of the court.

This case could be easily and summarily disposed of; but, as we are requested to pass on the validity of one of the most important statutes passed by the legislature in recent years, we deem it our duty to go fully into the questions presented for our consideration in this record.

By chapter 106, Laws of Mississippi 1908, entitled "An act creating a live stock sanitary board, specifying who shall constitute the same, fixing compensation for services of the members, delegating powers and authority for regulating live stock matters and the right to establish and maintain quarantine lines, prevent the introduction and spread of the Texas or tick fever, appoint inspectors and officers for the enforcement of regulations," the legislative department has inaugurated a movement to rid the state of the cattle tick, now known to be the greatest enemy of stock raisers, and it seems to be the duty of this court to lend its assistance to all proper efforts to serve the material interests of the people of the state.

The validity of the statute in question arises in this case by the conviction of appellant for an alleged violation of the rules and regulations of the Mississippi Live Stock Board, and the affidavit upon which he was tried is in the following words: "The state of Mississippi, Jefferson county. Personally appeared before the under-

signed justice of the peace in and for said county, for the first justice district thereof, W. C. Bailey, who makes oath that T. W. Abbott did, in the county aforesaid and in said justice district, on or about the 26th day of July, A. D. 1912, while owning and having cattle in that portion of Jefferson county and in said district, which was quarantined as having a contagious and infectious disease known as Texas or fever-carrying tick, under the rules and regulations of the state sanitary board of Mississippi, did willfully and unlawfully fail and refuse to dip in a standard dipping vat his said cattle, infected with or exposed to the infection of the Texas or fever-carrying tick, according to the rules and regulations of the Mississippi Live Stock Board, after having been duly and legally served with a notice by a state live stock inspector, so to do, against the peace and dignity of the state of Mississippi.''

So far as the rights of appellant are concerned, it is only necessary to determine whether the affidavit charges any offense known to the laws of the state, and to solve this question it is necessary to consider and construe chapter 106 of the Laws of 1908. The first two sections of this act provide for a state live stock and sanitary board, and for the official headquarters of the board. Sections 3, 4, 5, and 6 read this way:

''Sec. 3. That said board shall have plenary power to deal with all contagious and infectious, diseases of animals as in the opinion of the board may be prevented, controlled or eradicated, and with full power to make, promulgate and enforce such rules and regulations as in the judgment of the board may be necessary to control, eradicate and prevent the introduction and spread of Texas or tick fever and the fever-carrying tick (boophilus annulatus), and all other disease of animals in the state.

''Sec. 4. That any person, firm or corporation violating any of the provisions of this act or interfering with

any duly appointed officer of said board, shall be guilty of a misdemeanor and fined upon conviction thereof not less than fifty dollars and not more than three hundred dollars, and shall also be liable to any person injured for any and all damages resulting from such violations.

"Sec. 5. That any person, firm or corporation driving, conveying or transporting from any other state or territory into or through this state, or moving within this state, animals known to be infested with the infection of a contagious or communicable disease, contrary to the rules and regulations of this board, shall be guilty of a misdemeanor and upon conviction thereof subject to a fine of not more than five hundred dollars or imprisonment in the county jail not to exceed six months or both at the discretion of the court.

"Sec. 6. That this board be, and the same is hereby, vested with full authority to establish and maintain quarantine lines and to appoint as many inspectors as may be deemed necessary and the funds at its disposal will permit, and to delegate authority to said inspectors to enter premises, to inspect and disinfect live stock and premises, and enforce quarantine including counties, farms, pens, and stables."

It will be observed that section 3 invests the board with "plenary power to deal with all contagious and infectious diseases of animals," and with "full power to make, promulgate and enforce such rules and regulations" as in the judgment of the board "may be necessary to control, eradicate and prevent the introduction and spread" of the tick fever and fever-carrying tick. Section 4 prescribes the penalty for the violation of "this act," and also gives to any person injured by violations of the law a right of action for damages against the wrongdoer. Section 5 provides a penalty for bringing infected cattle into the state, or for moving cattle from one point in the state to another point in the state.

This defendant was charged with a failure and refusal to dip his cattle in accordance with the rules and regula-

tions of the state live stock board, and therefore section 5 has no application to the offense charged.

Does section 4 provide a penalty for the offense charged against appellant? Were the alleged acts of appellant in violation of chapter 106? These are the questions to be answered by this court.

It seems clear that the legislature may confer upon the live stock board the power to make rules and regulations to prevent the introduction and spread of contagious or infectious diseases of live stock, and in the same act provide penalties for violations of such rules and regulations thereafter to be adopted. In such legislation it is the legislature that makes a violation of the rules and regulations a crime, and not the live stock board that makes the violation thereof a crime. Much authority may be found to the effect that legislation of this character is not a delegation of legislative functions, but we believe it unnecessary to collate the authorities here. We will, however, briefly discuss a case decided by the supreme court of the United States.

In *United States* v. *Grimaud*, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563, Justice LAMAR (a name revered in this state) goes into the entire question of the power of the Congress to delegate to administrative officers and boards the power to make rules and regulations, and to provide penalties, in the same act, for violations of such reasonable rules and regulations as the administrative officer may thereafter promulgate. In that case the secretary of Agriculture was authorized by Congress "to regulate the occupancy and use and to preserve the forests from destruction," and the court through Justice LAMAR said: "It is true that there is no act of Congress which, in express terms, declares that it shall be unlawful to graze sheep on a forest reserve. But the statutes from which we have quoted declare that the privilege of using reserves for 'all proper and lawful purposes' is subject to the proviso that the person so using them shall

comply 'with the rules and regulations covering said forest reservation.' The same act makes it an offense to violate those regulations; that is, to use them otherwise than in accordance with the rules established by the secretary." The act of Congress was held to be beyond criticism.

The rule is thus stated by the supreme court of the United States, in *Marshall Field & Co.* v. *Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294: "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its action depend. To deny this would be to stop the wheels of government."

In *Ex parte Fritz,* 86 Miss. 222, 38 So. 722, 109 Am. St. 700, this court held that the power could be delegated to the board of supervisors to make rules and regulations for the protection of game and fish, and to provide penalties for the violation of such rules. This decision is based on the historical powers conceded to this board, but there is no doubt in that case this court is committed to a liberal rule governing the delegation of legislative functions.

The act under review could have been made more specific in its terms, by prescribing in the broadest language a penalty for any and all violations of the rules and regulations of the live stock board; and, had that been done, we would be relieved of all difficulty in the instant case. It is contended that it was the intention of the legislature to do this very thing, but we must look to the law itself for the legislative intent, and it is not within the province of the court to write the law—that power rests with the legislative department.

This statute is a penal statute, and must be strictly construed. It may not be impertinent to say that by any rule of construction, whether liberal, or strict, can we find anything therein which penalizes the act the affi-

davit charges appellant with doing. As before stated, section 5 has no application here, and section 4 penalizes violations of the act itself, and there is nothing in the act requiring persons to dip their cattle. This omission, inadvertent or intentional, is unfortunate from an economical standpoint, which can be corrected by the legislature should the legislature desire to broaden the law on this subject. It follows that appellant has not violated the law as written.

*Reversed and dismissed.*