## CLARK *v.* STATE.

(Division A. Feb. 26, 1934. Suggestion of Error Overruled March 26, 1934.)

[152 So. 820. No. 30805.]

E. W. Stennett, of Jackson, for appellant.

Bert Crisler, of Jackson, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, and **W. A. Shipman,** of Jackson, for the state.

**McGowen, J.,** delivered the opinion of the court.

In a court of a justice of the peace, prosecution, by affidavit, was instituted against the appellant, S. C. Clark, charging him with unlawfully practicing the profession of barbering without a valid certificate of registration as a registered barber, which resulted in his being tried, convicted, and sentenced to pay a fine of twenty-five dollars and costs. He appealed to the county court, and there the case was tried on an agreed statement of facts. Appellant filed a motion to exclude the evidence on twenty-five grounds, and also a demurrer to the affidavit. It is conceded that if the statute under which conviction was had is constitutional, appellant is guilty of the charge. He was also convicted in the county court, and from that judgment he appealed to the circuit court, where the case was affirmed, and he prosecutes an appeal here.

Although there were twenty-five points of attack in the county court, the briefs of counsel for appellant seem to rest their attack upon the validity of the law on the following grounds: "(1) The statute invests uncontrolled, unlimited, arbitrary, and discretionary powers in the barbering board; (2) it requires the payment of an unauthorized occupation tax neither equal nor in proportion to the property taxes; (3) it is an unwarranted abridgment of the right of a citizen to engage in a lawful trade or calling; (4) it is unjust, unfair, discriminative, and oppressive." The prosecution was initiated upon an alleged violation of section 5, chapter 118, Laws of 1932, which is an amendment of chapter 131, Laws of 1930, regulating the practice of barbering in this state.

Section 1 of the act provides for a board of barber examiners; section 2 for the compensation of its officers; and section 3 is with reference to its funds. Section 4, in substance, provides that the board of barber ex-

aminers shall have authority to make reasonable rules and regulations for the administration of the provisions of the act, and that it shall adopt the regulations of the state board of health governing barber shops.

Section 5 of the act reads: "No person shall practice or attempt to practice barbering in the state of Mississippi without a certificate of registration as a registered barber issued pursuant to the provisions of this chapter. No person shall serve or attempt to serve as an apprentice in the profession of barbering in the state of Mississippi, unless under the direct supervision and management of a registered barber and under the immediate personal supervision of a registered barber in a licensed shop."

Section 6 of the act provides the qualifications necessary for a certificate of registration as a registered barber, which are: That he be at least eighteen years of age and has passed a satisfactory physical examination by a licensed physician showing him to be free from a contagious or communicable disease; that he "has practiced as a registered apprentice for twelve months" and "has passed a satisfactory examination conducted by the board of examiners, to determine his fitness to practice barbering."

Section 7 defines the qualifications of an apprentice; section 8, how application for examination shall be made; and section 9 is in these words:

"The board of barber examiners conduct examinations of applicants for certificates of registration to practice as registered barbers, and of applicants for certificates of registration to practice as registered apprentice barbers not less than three times a year, which examination shall be had in some town or city selected by the examining board, at least one in each supreme court district of the state; provided, however, that the said examination shall be equally and yearly distributed at a point or place in each of the said supreme court districts."

Section 15 of the act fixes the fee for an examination at five dollars, and for the issuance of a certificate, one dollar. Section 16 requires every registered barber and every registered apprentice who continues in active practice to renew his certificate of registration on or before the first day of July of each year. Section 17 provides and defines what constitutes the practice of barbering, such as shaving faces, cutting the hair, treatment of the face, shampooing and treatment of the hair, and application of cosmetic preparations. Section 18 provides certain exemptions, among which are, physicians and surgeons, registered nurses, and operators engaged in the operation of beauty parlors, and persons carrying on the practice of barbering in any town or village of less than five hundred inhabitants or anywhere outside of a city having a population of five hundred or more inhabitants. Section 19 prohibits certain acts constituting the violation thereof a misdemeanor, and among which is the violation of any of the provisions of section 5 of the act. Section 20 provides that if any portion of the act is declared unconstitutional, it shall not affect the validity of the remainder of the act which can be given effect without the invalid portion.

1. It is insisted that the statute vests uncontrolled, unlimited, arbitrary, and discriminatory power in the board of barber examiners, and it is urged upon us that section 5 of the act, among other things, requires that an applicant must pass a satisfactory examination conducted by the board of examiners to determine his fitness to practice barbering; and it is said by appellant that this fails to establish a satisfactory yardstick by which the fitness of an applicant is to be determined, that the determination of these important factors is left entirely to the unlimited and uncontrolled discretion of the members of the board of examiners, and that the Fourteenth Amendment of the Federal Constitution is

thereby violated in that the appellant is denied equal protection under the law.

Appellant cites only one case, Cicero Lumber Co. v. Town of Cicero, 176 Ill. 27, 51 N. E. 758, 42 L. R. A. 704, 68 Am. St. Rep. 163, in which the town of Cicero passed an ordinance prohibiting the use of traffic vehicles on a certain boulevard unless the owners of such vehicles first obtained a permit from the board of trustees of the town, although the Supreme Court of Illinois held this statute to be unreasonable and discriminatory in that it prohibited a perfectly lawful act, driving on the highway, and left to the unregulated discretion of certain officials the right to say who should and should not travel on a particular highway; so that we are of opinion that this case does not solve the question presented here.

It would doubtless be conceded that if this provision for examination should be held invalid, the law would thereby be ineffective to accomplish any desirable purpose. The validity of a law is to be decided by its terms and provisions, and not by the manner in which it might be administered, operated, or enforced. Section 5 required this applicant to renew his registration and to pay a fee therefor, which he did not do and continued to practice his profession.

If we were confined to the language of section 5 as to a satisfactory examination, there would be considerable difficulty in upholding this statute; but, as we view it, this paragraph of section 9 of the act furnishes some test: ''The examination of applicants for certificates of registration as registered barbers, and registered apprentice barbers shall include both a practical demonstration and a written and oral test, and shall embrace the subjects usually practiced in a duly licensed shop of Mississippi under the direct and personal supervision of registered barber.'' In reading this section in connection with section 17 of the act, which defines what

constitutes the practice of barbering, it would clearly appear that the examination shall be limited to those subjects, and that the determination of who shall qualify to practice barbering is not left entirely to the arbitrary discretion of the board to require an applicant to pass an unusual, arbitrary, and uncontrolled examination.

"The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government." See Marshall Field v. Clark, 143 U. S. 694, 12 S. Ct. 495, 505, 36 L. Ed. 310, and U. S. v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 567, wherein Mr. Justice LAMAR, speaking for the Supreme Court of the United States, laid down the rule that congress had the power to legislate generally upon the subject in hand, and to commit to the secretary of agriculture the power to make reasonable rules and regulations. In the case of Abbott v. State, 106 Miss. 340, 63 So. 667, this court held that the Legislature had the power to lay down the general rule by which a sanitary board created by it could make rules and regulations to prevent the spread of contagious and infectious diseases of live stock, and in the same act provided penalties for the violation of such rules and regulations thereafter adopted. However, none of the difficulty that was experienced in the Abbott case occurs here in section 19, as the crime herein charged is specifically defined. As to the power of the Legislature to create a board to find facts and to carry out the general purpose of the Legislature by reasonable rules and regulations, the authorities are abundant, but the above cases cited are sufficient.

In West Virginia the statute required every person to obtain a certificate from a board of examiners as to qualifications for a license to practice medicine, wherein the examination was left entirely to the judgment of

the board. In West Virginia v. Dent, 25 W. Va. 1, and Dent v. West Va., 129 U. S. 114, 9 S. Ct. 231, 32 L. Ed. 623, the law was held valid by the Supreme Court of West Virginia. The Legislature of Alabama likewise passed a law making it unlawful for an engineer to operate a train without a license from a board of examiners, leaving the matter to the judgment of the board without providing what should constitute the qualifications of an engineer. See Smith v. Alabama, 124 U. S. 465, 8 S. Ct. 564, 31 L. Ed. 508. To the same effect, with reference to the license of plumbers, the validity of a statute is upheld in People ex rel. v. Warden of City Prison, 144 N. Y. 529, 39 N. E. 686, 27 L. R. A. 718.

2. It is insisted that to require a license from a barber is an infringement upon the liberty of a citizen. An examination of all the authorities above demonstrates that the courts of this land are committed to the proposition that the legislative branch of the government as to its police power for the health, good morals, and general welfare of the state is vested with that power to regulate the various callings, trades, and professions therein; and certainly it cannot be said that the regulation of the profession of barbering is without the police power of the state when it is considered what intimate contact one engaged in this practice has with the human body, and that the interest of the public health is promoted by officials of the state being vested with the power to regulate such a calling. While not requiring the high degree of education of the dental or medical profession, it is certainly in that category. The delegation of the general power to prescribe the qualifications of a barber does not vest in the board absolute discretion to grant or withhold a license; whenever that occurs, a person arbitrarily dealt with will have his day in court.

3. It is insisted that the law is local in its nature, arbitrary in its classification, and for that reason violates section 87 of the Constitution of 1890 and conflicts with

the Fourteenth Amendment of the Federal Constitution because of certain exemptions, for instance, beauty parlor operators, and classification by population. It has been too often held that the Legislature has wide discretion, and, if the classification is reasonable and embraces all of those of the class therein, then the law is general, not local, and the classification has a reasonable relation to the purpose sought to be attained—in other words, the classification must be germane to the subject-matter of the legislation. Certainly the statute is general in its terms, applying to all barbers in the state practicing the profession within any municipality of five hundred or more inhabitants; and the Legislature could not be charged with an unjust classification, because, perchance, some barbers practicing in isolated communities—isolated cases—may not fall within the class. The thing to look at is the object to be accomplished, and whether or not the classification is reasonably expected to attain that object and is germane thereto. The law is not local, nor is the classification arbitrary or unreasonable. Toombs v. Sharkey, 140 Miss. 676, 106 So. 273; State v. Gilmer Gro. Co., 156 Miss. 99, 125 So. 710; Cox v. Wallace, 100 Miss. 525, 56 So. 461.

It is insisted that because of certain exemptions the statute is void, arbitrary, and unreasonable. We are not called upon to say whether or not beauty operators are barbers within the meaning of this act. Courts have, however, held under very similar statutes that beauty operators are not barbers. See State v. DeGuile, 160 Minn. 191, 199 N. W. 569, and State ex rel. Melton v. Nolan, 161 Tenn. 293, 30 S. W. (2d) 601. The classification of a beauty shop as not being a barber shop appears to be within the reasonable discretion of the Legislature; and it must affirmatively appear that the exemption is arbitrary. But it is not necessary for us to so hold with reference to this exemption, as clearly the act applies to barbers practicing the profession, and the appellant

is a barber within the meaning of the statute; and if, perchance, an exemption is granted to some other person, he cannot complain because thereof. "One who is not prejudiced by the enforcement of an act of the legislature cannot question its constitutionality, or obtain a decision as to its validity on the ground that it impairs the rights of others." 6 R. C. L., pp. 89, 90; University v. Waugh, 105 Miss. 623, 62 So. 827, L. R. A. 1915D, 588, Ann. Cas. 1916E, 522; City of Jackson v. Deposit Bank, 160 Miss. 752, 133 So. 195. If there were no exemptions at all, or if all exemptions should be declared void, then that fact would not operate in favor of the appellant, because as to the classification and all other matters he is clearly included within the terms of the statute, and as to him, it is valid.

4. There is no merit in the contention that the registration fee required to be paid under the act is a tax within the meaning of section 112 of the Constitution of 1890, but is a registration fee fixed by the Legislature, as shown by the terms of the act designed to pay the cost of the regulation and the proper operation of the board of barber examiners and of the barbers' profession in this state.

5. The regulation of lawful trades or businesses is within the exercise of the police power of the state, and unless it is unreasonable in its nature, or so arbitrary in its enforcement on its face, that the property right of citizens are unnecessarily and arbitrarily interfered with or destroyed, or their liberty unduly abridged, such regulations are not beyond the police power of the state to adopt. See State v. J. J. Newman Lumber Company, 102 Miss. 802, 59 So. 923, 45 L. R. A. (N. S.) 851.

We have reached the conclusion that the statutes in question do not violate any section of the state or Federal Constitution that has been called to our attention Whether the legislation is wise or unwise, politic or impolitic, is not a question for the court, but exclusively

one for the Legislature. It is not the province of the courts to put the Legislature in a strait-jacket, or unduly limit the police power of a state so necessary in a democratic form of government. The prime and dominant purpose of this act is to promote the health of the people of the commonwealth.

Affirmed.