## State *v.* Allstate Insurance Company

No. 40653 October 7, 1957 97 So. 2d 372

Joe T. Patterson, Atty. Gen., A. B. McCraw, Thos. H. Watkins, Jackson, for appellant.

874

*Lipscomb, Ray & Barksdale*, Jackson, for appellee.

876

ETHRIDGE, J.

This case involves a unique question, one of first impression, at least as to the industry involved. It is concerned with the constitutional validity of a statute delegating to the majority of a private group of stock fire insurance companies the determination of the uniform rate or amount of commissions to be received by their local insurance agents.

This proceeding arises from an admitted violation by appellee, Allstate Insurance Company, of some of the provisions of Mississippi Code of 1942, Sec. 5825. The

first part of that statute gives the Insurance Commission the power to reduce insurance premium rates charged by stock fire insurance companies where they make a profit exceeding what is fair and reasonable. The last two sentences of Section 5825, which are those here in issue, create a method of fixing uniform commission rates to be paid local agents in Mississippi of stock fire insurance companies doing business in the state:

"The Insurance Commission shall, on the first day of November and annually thereafter address a written communication to every stock fire insurance company authorized to do business in Mississippi and secure its written opinion as to the amount of commissions the authorized stock fire insurance company in this state should pay local agents. The Insurance Commission shall then compile this information and shall advise the rating bureau as to the majority opinion, which majority opinion shall fix the amount or rate of the commissions to be paid local agents in this State; which amount or rate of commissions to be paid said local agents shall be kept at all times uniform as to the classes of risks throughout the State, in order that the profits of said stock fire insurance companies doing business in this State may be accurately ascertained, and which amount or rate of commissions shall apply to companies which under their customary and established plan of operation compensate agents in whole or in part on a commission basis."

The quoted provision was first enacted in Laws 1924, Ch. 188, Sec. 10. It was re-enacted in Miss. Code 1930, Sec. 5311 and Laws 1938, Ch. 196.

On September 29, 1956, the Insurance Commissioner filed in the County Court of the First Judicial District of Hinds County an affidavit charging that appellee company was guilty of a misdemeanor in the violation of Code Section 5825. See Code of 1942, Sec. 5830. The affidavit charged that on September 11, 1956, Allstate contracted with Willoughby to serve as its local agent to

write fire and extended coverage insurance, at a commission of 15% on the first year's premiums and 6½% on renewal premiums; that Allstate, through this agent, sold to Bush a fire insurance policy on Bush's dwelling in Jackson; and that Allstate paid its agent a 15% commission, although the Insurance Commission, acting pursuant to Code Section 5825, had fixed the uniform amount of commission on such policies at 25%.

Counsel for the State and appellee stipulated the facts. Allstate is authorized to do business in Mississippi, and is a member of the State Rating Bureau. On September 6, 1956, it applied for a 15% downward deviation from the fire and extended coverage rates promulgated by the State Rating Bureau, and the application was accepted by the Insurance Commissioner. On September 11, Allstate contracted with Willoughby to write fire and extended coverage insurance at a commission of 15% on first-year premiums and 6½% on renewal premiums. The stipulation admitted the sale of the policy and payment of the 15% commission as charged in the affidavit.

Pursuant to Section 5825, the rate of commissions to be paid local agents of stock fire insurance companies had been fixed at 25% for the year 1956. Such rate was in force and effect at the time of the transaction complained of. In addition to paying the commissions stated above, Allstate furnishes its local agents office space, telephone, and other utility services, and prepares all policies issued at the expense of Allstate and without any expense to such agents. Practically all other stock fire insurance companies in Mississippi have local agents who provide their own office space and other expenses. Allstate writes fire insurance in forty-five states other than Mississippi and in the District of Columbia. In all it pays its local agents on a basis of 15% of the first-year premiums and 6½% on renewals. It was stipulated that the savings effected by Allstate through economy in operations, including commissions, are passed on to its

policyholders through reduced premium rates. Writing fire insurance in Mississippi are 291 foreign stock companies, 2 domestic stock companies, 50 foreign mutual companies, and 6 domestic mutual insurance companies.

Allstate admitted the truth of the allegations in the affidavit, but contended that the quoted part of Section 5825 providing a method of fixing the rate of commissions for local insurance agents is unconstitutional. The County Court held that Code Section 5825, insofar as it attempted to fix commissions of agents, is unconstitutional. The Circuit Court affirmed the judgment for defendant, on the ground that the statute was an invalid delegation of legislative power to private companies and without any standards. The State again appealed to this Court, under the authority of Code Section 1153, which authorizes the State to appeal from a judgment actually acquitting defendant where a question of law has been decided adversely to the State, but precludes any retrial.

 We have concluded that the last two sentences of Code Section 5825 are unconstitutional and invalid for two reasons: (1) Assuming some power to fix agents' commission rates is delegated to the Commission, nevertheless the statute constitutes an improper delegation of legislative authority because it fails to provide adequate standards for the guidance of the administrative agency to which such authority is delegated; and (2) the statute delegates nothing but a ministerial duty to the Commission, and constitutes an improper delegation of legislative authority to private groups and not to a public agency.

*First.* Mississippi Constitution Section 33 provides, "The legislative power of this state shall be vested in a legislature which shall consist of a senate and a house of representatives." Section 1 divides the powers of the government into three distinct departments, and Section 2 states that no person belonging to one of the depart-

ments shall exercise any power properly belonging to either of the others.

■■ The traditional theory is that the legislature cannot delegate power to make law, but may delegate power to determine facts on which the law makes its own action depend. Clark v. State, 169 Miss. 369, 152 So. 820 (1934); Abbott v. State, 106 Miss. 340, 63 So. 667 (1913). ■■ Legislative power or functions may be delegated to an administrative agency only in the limited sense that the statute must set forth the legislative decision and must prescribe adequate standards or rules for the agency's guidance. It cannot be vested with an arbitrary and uncontrolled discretion. 73 C. J. S., Public Administrative Bodies and Procedures, Sec. 29. **(Hn 4)** In other words, constitutional theory legitimizes the the situation by taking the position that constitutional provisions do not force upon the legislature and courts a monopoly of legislating and adjudicating; and that these functions in a restricted manner may be delegated to executive or administrative agencies by the acts of the legislature if the latter prescribe limits within which the administrative grantees are to operate. The principal doctrines involved are those respecting the separation and delegation of powers, and both of these lead to the practical field of adequacy of legislative standards. That term is used to embrace statements of objective, policy or purpose, as well as definitions, specifications, requisites and limitations. In other words there should be a reasonable clear standard by which the discretion granted to the agency must be governed. Clark v. State, supra; Davis, Administrative Law (1951), Secs. 10-18; 42 Am. Jur., Public Administrative Law, Secs. 42-52.

■■ The pertinent part of Code Section 5825 does not fix any standard by which the Insurance Commission would be governed in fixing or regulating the commissions of local agents. It simply requires that the Commission secure the written opinions of stock fire insur-

ance companies doing business in Mississippi as to the amount of commissions; and that the "majority opinion" shall fix the amount or rate of the commissions to be paid local agents. It says that the rate of commissions shall be uniform as to the classes of risks throughout the state. But uniformity provides no criterion to serve as a standard for measuring the powers of the Commission, assuming the Insurance Commission has some voice in this process.

██ ██ A standard or rein upon an administrative agency is a constitutional requirement, and its presence or absence is a judicial question. In the actual delegation is there found a standard, and is it sufficient? Forkosch, Administrative Law (1956), Sec. 81. ██ ██ The constitution does not demand the impossible or the impractical, but it requires that the legislature, with such clarity as is reasonably practical, delineate the general policy, the public agency which is to apply it, and the boundaries of this delegated power. Forkosch, Sec. 83.

██ ██ Assuming that the Commission has some implied power in administering the act, what that power is is nebulous. The statute fails to establish any standard or boundary within which the Commission could operate, and to comply with constitutional requirements with reference to a practical standard for the administrative agency. So the part of Section 5825 dealing with agent's commissions is invalid as constituting an improper delegation of legislative authority, because it fails to provide adequate standards for the guidance of the delegatee of the power.

██ ██ *Second.* There is another reason why the statute is invalid as an improper delegation of legislative power. It lodges the power to initiate and to determine agents' commissions or rates exclusively in private groups, the stock fire insurance companies authorized to do business in Mississippi, and delegates the power to

fix such commissions to private insurance companies without any power in the Commission to modify or revise them. After the Commission secures the written opinion of the companies, the act requires it to compile this information and to advise the Rating Bureau as "to the majority opinion, which majority opinion shall fix the amount or rate of the commissions to be paid local agents in this state ..." In other words, the Commission has only a ministerial duty in fixing agents' commissions. It polls the insurance companies, obtains what the act calls the "majority opinion", by which apparently is meant the consensus of opinion of the companies, and this consensus "shall" constitute the rate of agents' commissions. So a majority of the companies fix the commissions and all are bound by it.

The power of a state to regulate the insurance business extends to the reasonable regulation of the compensation paid agents and brokers. O'Gorman and Young v. Hartford Fire Insurance Company, 282 U. S. 251, 51 S. Ct. 130, 75 L. Ed. 324, 72 A. L. R. 1163 (1931); 1 Richards on Insurance (5th ed. 1952), Sec. 53; 44 C. J. S., Insurance, Sec. 85; 19 Appleman, Insurance Law and Practice (1946), Sec. 10421. But here neither the legislature nor a public agency undertakes to regulate the commissions of insurance agents. It attempts to delegate that power, without establishing any standards or boundaries, not to an administrative agency of the state, but to a majority of the stock fire insurance companies themselves. This cannot be done consistent with constitutional requirements.

Perhaps the best recent survey of this problem is in an annotation in 3 A. L. R. 2d 188 (1949), "Delegation of Legislative Power to Nongovernmental Agencies as Regards Prices, Wages and Hours." Analyzing the problem, that note says:

"There are two types of statutes presenting the problem of delegation of legislative power to nongovernment-

al agencies in the situation discussed herein: statutes which empower an administrative agency to promulgate the legislation involved but give private groups, to a greater or lesser extent, the right to participate in the legislative process; and those which may be viewed as delegating legislative authority directly to private groups, individuals, or corporations.

"As to statutes of the first kind—under which the administrative agency is to promulgate legislation but with the participation of private groups—a distinction is drawn in the cases between the statutes which give such private groups power to initiate the legislation subsequently to be promulgated by the administrative body and those which contemplate the approval by the private group of legislation initiated by the administrative agency before it is promulgated by the agency. While statutes under which the appropriate administrative agency is without power to act upon its own initiative and can act only upon the initiative of certain private groups have been invalidated as an improper delegation of legislative authority to such groups, statutes under which administrative action was to take effect only upon approval of such groups have been held not to be subject to the same objection. Yet in both situations a private group of persons affected by prospective administrative legislation may prevent such legislation, in the first situation by remaining inactive, and in the latter by refusing approval. Of course, no objections on the grounds considered herein exist against statutes under which private groups may propose legislation to administrative agencies which are empowered also to act upon their own initiative. . . .

"Statutes which lodge the power to initiate administrative legislation on prices, wages, or hours exclusively in private groups and limit the power of the appropriate administrative agency to approval or disapproval of such legislation, in some instances even without authoriz-

ing them to modify or revise it, have been held invalid as an improper delegation of legislative power in a number of cases." Chester C. Fosgate Co. v. Kirkland, 19 F. Supp. 152 (1937; DC Fla.); Hollingsworth v. State Barber Examiners, 217 Ind. 373, 28 N. E. 2d 64 (1940); Maryland Co-op. Milk Producers v. Miller, 170 Md. 81, 182 A. 432 (1935); Van Winkle v. Fred Meyer, Inc., 151 Or. 455, 42 P. 2d 1140 (1935); La Forge v. Ellis, 175 Or. 545, 154 P. 2d 844 (1945); Revne v. Trade Commission, 192 P. 2d 563, 3 A. L. R. 2d 169 (1948 Utah); Gibson Auto Co. v. Finnegan, 217 Wis. 401, 259 N. W. 420 (1935); Henneman v. Finnegan, 217 Wis. 414, 259 N. W. 425 (1935).

Code Section 5825, which appears to be the only act of its type in the nation, not only lodges the power to initiate the rates of agents' commissions exclusively in private groups. It also gives a majority of the private groups the power to fix the rates, and does not even authorize the Insurance Commission to approve or disapprove of the commissions as so fixed.

██ ██ Although the Commission must compile the rates voted upon by the companies, it has no discretion but to put them into effect. Hence in fact the delegation of legislative power under Section 5825 is directly to a majority of the stock fire insurance companies themselves. The delegation of the legislative power to determine private rights and duties to private groups can exist only in a limited sense where the functions of the private group are advisory in nature, and where the private group conforms to the power and rules of the public agency. In Schechter Poultry Corp. v. U. S., 295 U. S. 495, 537, 55 S. Ct. 837, 846, 79 L. Ed. 1570 (1935), Chief Justice Hughes said: "But would it be seriously contended that Congress could delegate its legislative authority to trade or industrial associations or groups so as to empower them to enact the laws they deem to be wise and beneficient for the rehabilitation and expansion of

their trade or industries? Could trade or industrial associations or groups be constituted legislative bodies for that purpose because such associations or groups are familiar with the problems of their enterprises? And could an effort of that sort be made valid by such a preface of generalities as to permissible aims as we find in section 1 of title 1? The answer is obvious. Such a delegation of legislative power is unknown to our law, and is utterly inconsistent with the constitutional prerogatives and duties of Congress.''

On the other hand where the industry committee is advisory and its regulations are not binding and can be ignored, and a public administrative official controls and directs all phases of the overall procedure, an act has been upheld. Opp Cotton Mills Inc., v. Administration, 312 U. S. 126, 61 S. Ct. 524, 85 L. Ed. 624 (1941); Forkosch, Sec. 85. See also Davis Administrative Law (1951), Sec. 21; 16 C. J. S., Constitutional Law, Sec, 137; 11 Am. Jur., Constitutional Law, Sec. 221.

Perhaps the leading case on the question of improper delegations to private groups is Carter v. Carter Coal Co., 298 U. S. 238, 56 S. Ct. 855, 873, 80 L. Ed. 1160 (1936). The Federal Bituminous Conservation Act of 1935 provided that whenever the maximum daily and weekly hours and minimum wages of labor are agreed upon by the producers of more than two-thirds of the annual national tonnage production and the representatives of more than one-half of the mine workers employed, such maximum hours and minimum wages of labor shall be accepted by all the Code members, shall be filed with the labor board and shall be binding as the minimum wages and maximum hours for the industry. The court held the act invalid, partly because it was an improper delegation of legislative power to private groups: ''The power conferred upon the majority is, in effect, the power to regulate the affairs of an unwilling minority. This is legislative delegation in its most obnoxious form; for

it is not even delegation to an official or an official body, presumptively disinterested, but to private persons whose interests may be and often are adverse to the interests of others in the same business." See also Anno., 3 A. L. R. 2d, 199-201.

Tatum v. Wheeless, 180 Miss. 800, 829, 178 So. 95 (1938) is not in point. Appellant attacked the validity of the unemployment compensation act. It was upheld as being based upon the police power of the state. The act authorized its suspension for not more than six months if the governor found that the Federal Social Security Act has been amended or repealed, or declared unconstitutional by the Federal Supreme Court. This was held not to be an improper delegation of legislative power. The legislature simply fixed the conditions under which the act could operate, and then delegated to the governor the determination of the question of fact upon which the operation was to be suspended. See also Jaffe, Law Making by Private Groups, 51 Harv. L. Rev. 201 (1937); Note, 32 Col. L. Rev. 80 (1932); Note, 37 Col. L. Rev. 447 (1937); Hale, Our Equivocal Constitutional Guaranties, 39 Col. L. Rev. 563 ((1939); Dubinsky, Delegation of Power to Private Groups in Missouri, 26 Wash. Univ. L. Q. 540 (1941); Ray, Delegation of Power in Texas to Agencies Other Than State Administrative Bodies, 16 Tex. L. Rev. 494 (1938); Davis, Administrative Law (1951), Sec. 21; Forkosch, Administrative Law (1956), Sec. 85.

In summary, for both of the stated reasons the last two sentences of Code Section 5825 are unconstitutional and invalid because they are improper delegations of legislative power. It is not necessary to pass upon the other points argued by appellee.

Affirmed.

All Justices concur.