Appellant was convicted in the Municipal Court of the City of Clarksdale on a charge of parading without a permit. The conviction was affirmed by the county court and by the circuit court from whence it comes here.
The proof showed no disorderly conduct nor any distracting activity, and we are compelled to reverse the case and dismiss the appellant.
The sole question argued by appellant is the unconstitutionality of the city ordinance under which he was convicted. The first section thereof reads as follows:
 "That it shall be unlawful for any person, or persons, to conduct or participate in any parade or marching on the sidewalks or streets of the City of Clarksdale, Mississippi, or to move or stand on said sidewalks or streets, carrying banners, placards, signs or the like, or to sit or lie on the sidewalks or streets or curbs of said City, or for any person, or persons, to engage in shouting, singing, orating, public speaking, or any other distracting activities of any kind on any of the sidewalks or streets of the City of Clarksdale, Mississippi, without the written permission of the Chief of Police of said City."
It will be seen that this ordinance confers upon the chief of police of the city unrestricted discretion as to who shall or shall not parade or march on the sidewalks or streets of the city, with no standards as to time, place of marching or any other feature.
In Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941), a somewhat similar ordinance was held valid by the Supreme Court of the United States because of the construction placed *Page 229 
thereupon by the New Hampshire court. The Court said:
 "Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses. The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. Where a restriction of the use of highways in that relation is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection. One would not be justified in ignoring the familiar red traffic light because he thought it his religious duty to disobey the municipal command or sought by that means to direct public attention to an announcement of his opinions. As regulation of the use of the streets, for parades and processions is a traditional exercise of control by local government, the question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places. Lovell v. City of Griffin, 303 U.S. 444, 451, 58 S.Ct. 666, 668, 82 L.Ed. 949; Hague v. Committee for Industrial Organization, 307 U.S. 496, 515, 516, 59 S.Ct. 954, 963, 964, 83 L.Ed. 1423; Schneider v. State of New Jersey, 308 U.S. 147, 160, 60 S.Ct. 146, 150, 84 L.Ed. 155; Cantwell v. State of Connecticut, 310 U.S. 296, 306, 307, 60 S.Ct. 900, 904, 84 L.Ed. 1213." (312 U.S. at 574-575, 61 S.Ct. at 765, 85 L.Ed. at 1052-1053.)
With reference to the Supreme Court of New Hampshire, the Court in that same opinion said:
 "* * * But the court held that the licensing board was not vested with arbitrary power or an unfettered discretion; that its discretion must be exercised with `uniformity of method of treatment upon the facts of each application, free from improper or inappropriate considerations and from unfair discrimination'; that a `systematic, consistent and just order of treatment, with reference to the convenience of public use of the highways, is the statutory mandate'. The defendants, said the court, `had a right, under the act, to a license to march when, where and as they did, if after a required investigation it was found that the convenience of the public in the use of the streets would not thereby be unduly disturbed, upon such conditions or changes in time, place and manner as would avoid disturbance'.
 "If a municipality has authority to control the use of its public streets for parades or processions, as it undoubtedly has, it cannot be denied authority to give consideration, without unfair discrimination, to time, place and manner in relation to the other proper uses of the streets. We find it impossible to say that the limited authority conferred by the licensing provisions of the statute in question as thus construed by the state court contravened any constitutional right." (312 U.S. at 576, 61 S.Ct. at 766, 85 L.Ed. at 1053-1054.)
Following that case, the Supreme Court of the United States had before it Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), where the Court considered a somewhat similar statute of the State of Louisiana under which *Page 230 
appellant was convicted. There, the Court said:
 "* * * The statute itself provides no standards for the determination of local officials as to which assemblies to permit or which to prohibit. Nor are there any administrative regulations on this subject which have been called to our attention. From all the evidence before us it appears that the authorities in Baton Rouge permit or prohibit parades or street meetings in their completely uncontrolled discretion.
 "The situation is thus the same as if the statute itself expressly provided that there could only be peaceful parades or demonstrations in the unbridled discretion of the local officials. The pervasive restraint on freedom of discussion by the practice of the authorities under the statute is not any less effective than a statute expressly permitting such selective enforcement. A long line of cases in this Court makes it clear that a State or municipality cannot `require all who wish to disseminate ideas to present them first to police authorities for their consideration and approval, with a discretion in the police to say some ideas may, while other may not, be * * * disseminate(d) * * *.' Schneider v. State of New Jersey, supra, 308 U.S. 147 at 164, 60 S.Ct. 146, 84 L.Ed. 155. See Lovell v. City of Griffin, supra; Hague v. CIO, supra; Largent v. State of Texas, supra [318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873]; Saia v. People of State of New York, supra [334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574]; Niemotko v. State of Maryland, supra [340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267]; Kunz v. People of State of New York, supra [340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280].
 "This Court has recognized that the lodging of such broad discretion in a public official allows him to determine which expressions of view will be permitted and which will not. This thus sanctions a device for the suppression of the communication of ideas and permits the official to act as a censor. See Saia v. People of State of New York, supra, 334 U.S. at 562, 68 S.Ct. at 1150. Also inherent in such a system allowing parades or meetings only with the prior permission of an official is the obvious danger to the right of a person or group not to be denied equal protection of the laws. See Niemotko v. State of Maryland, supra, 340 U.S. at 272, 284, 71 S.Ct. at 327, 333; cf. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220. It is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious discrimination among persons or groups either by use of a statute providing a system of broad discretionary licensing power or, as in this case, the equivalent of such a system by selective enforcement of an extremely broad prohibitory statute.
 "It is, of course, undisputed that appropriate, limited discretion, under properly drawn statutes or ordinances, concerning the time, place, duration, or manner of use of the streets for public assemblies may be vested in administrative officials, provided that such limited discretion is `exercised with "uniformity of method of treatment upon the facts of each application, free from improper or inappropriate considerations and from unfair discrimination" * * * (and with) a "systematic, consistent and just order of treatment, with reference to the convenience of public use of the highways * * *." Cox v. State of New Hampshire, supra, 312 U.S. at 576, 61 S.Ct., at 766. See Poulos v. State of New Hampshire, supra [345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105].
 "But here it is clear that the practice in Baton Rouge allowing unfettered discretion in local officials in the regulation of the use of the streets for peaceful parades and meetings is an unwarranted abridgment of appellant's freedom of *Page 231 
speech and assembly secured to him by the First Amendment, as applied to the States by the Fourteenth Amendment. It follows, therefore, that appellant's conviction for violating the statute as so applied and enforced must be reversed." (379 U.S. at 556-557-558, 85 S.Ct. at 465-466, 13 L.Ed.2d at 485-486.)
Our own Court in civil cases has held to the same effect regarding statutes vesting unbridled discretion in administrative agencies.
In State v. Allstate Ins. Co., 231 Miss. 869, 97 So.2d 372
(1957), this Court held:
 "The traditional theory is that the legislature cannot delegate power to make law, but may delegate power to determine facts on which the law makes its own action depend. Clark v. State, 1934, 169 Miss. 369, 152 So. 820; Abbott v. State, 1913, 106 Miss. 340, 63 So. 667. Legislative power or functions may be delegated to an administrative agency only in the limited sense that the statute must set forth the legislative decision and must prescribe adequate standards or rules for the agency's guidance. It cannot be vested with an arbitrary and uncontrolled discretion. 73 C.J.S. Public Administrative Bodies and Procedure § 29. In other words, constitutional theory legitimizes the the (sic) situation by taking the position that constitutional provisions do not force upon the legislature and courts a monopoly of legislating and adjudicating; and that these functions in a restricted manner may be delegated to executive or administrative agencies by the acts of the legislature if the latter prescribe limits within which the administrative grantees are to operate. The principal doctrines involved are those respecting the separation and delegation of powers and both of these lead to the practical field of adequacy of legislative standards. That term is used to embrace statements of objective, policy or purpose, as well as definitions, specifications, requisites and limitations. In other words there should be a reasonable clear standard by which the discretion granted to the agency must be governed. Clark v. State, supra; Davis, Administrative Law (1951), Secs. 10-18; 42 Am.Jur., Public Administrative Law, Secs. 42-52." (231 Miss. at 882, 97 So.2d at 375-376.)
This case was followed by Broadhead v. Monaghan, Tax Commission, 238 Miss. 239, 263, 117 So.2d 881, 892 (1960), wherein the Court said:
 "* * * As stated by the textwriter in 73 C.J.S. Public Administrative Bodies and Procedure § 29, p. 323, `The lawmaking power may not be granted to an administrative body to be exercised under the guise of administrative discretion.' Accordingly, in delegating powers to an administrative body with respect to the administration of statutes, the legislature must ordinarily prescribe a policy, standard, or rule for their guidance and must not vest them with an arbitrary and uncontrolled discretion with regard thereto."
It is clear that under these decisions, the ordinance in question is null and void as vesting unfettered discretion in the chief of police, and we are therefore required to reverse and dismiss this case, discharging the appellant.
Reversed and case dismissed, discharging appellant.
GILLESPIE, P.J., and BRADY, PATTERSON and INZER, JJ., concur. *Page 232