# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00729-SCT

*CITY OF BELMONT, CITY OF CALHOUN CITY, CITY OF CANTON, CITY OF CORINTH, CITY OF GREENVILLE, CITY OF GRENADA, CITY OF GULFPORT, CITY OF HOUSTON, CITY OF INDIANOLA, CITY OF JACKSON, CITY OF KOSCIUSKO, CITY OF NEWTON, CITY OF OCEAN SPRINGS, CITY OF PEARL, AND CITY OF WAYNESBORO*

*v.*

*MISSISSIPPI STATE TAX COMMISSION AND EDWARD H. BUELOW, JR., CHAIRMAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/06/2001 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES RAY MOZINGO |
| | JAMES A. PEDEN |
| ATTORNEYS FOR APPELLEES: | SAMUEL D. HABEEB |
| | GARY WOOD STRINGER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 03/27/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1. Several municipalities sued the Mississippi State Tax Commission and its chairman

("MSTC") seeking declaratory and injunctive relief to require the MSTC to comply with

state law in its diversion of state sales tax funds to the municipalities.[1] On a Rule 12 (b)(6) motion to dismiss[2] filed by the MSTC, the circuit court dismissed this suit pursuant to Miss. Code Ann. §§ 11-46-9(1)(b), (d) & (i), Miss. Code Ann. §§ 27-65-75 and 27-3-57, and House Bill 987, 2000 Miss. Laws ch. 304 (H.B. 987). Some of these municipalities appeal the ruling of the circuit court citing numerous errors. Finding the MSTC's motion to dismiss was properly granted, this Court affirms the judgment of the circuit court.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. In 1968 the Legislature repealed the City Sales Tax Law, which had allowed Mississippi municipalities to levy and collect their own sales taxes, and replaced this source of revenue by disbursing to the municipalities a portion of the state sales tax pursuant to Miss. Code Ann. § 27-65-75. The MSTC is the department of state government charged with properly and accurately reporting to the State Treasurer and the State Auditor the amount of sales tax diversions due each municipality each month. Miss. Code Ann. § 27-3-1 *et seq*. (1999) and § 27-65-1 *et seq*. Pursuant to § 27-65-75(1), on the fifteenth day of each month, eighteen and one-half percent (18½ %) of the total sales tax revenue collected during the proceeding month on "business activities within a municipal corporation shall be allocated for distribution to such municipality and paid to each municipality." There are certain types of sales tax revenues which the MSTC is not required to divert to municipalities. *See* Miss. Code Ann. §§ 27-65-15, 27-65-19(3), 27-65-21 & 27-65-75.

---

[1]Though these several municipalities have repeatedly asserted that this litigation is not about monetary damages, as will be herein revealed, it really is.

[2]Miss. R. Civ. P. 12 (b)(6).

¶3.    According to Miss. Code Ann. § 27-3-57, it is the duty of the MSTC to determine the amount of funds owed to each municipality, while it is the duty of the State Treasurer to disburse the funds to the municipalities.

¶4.    At no time since the inception of municipal sales tax diversions in 1968 has the MSTC made a determination that sales tax disbursements should be made to the municipalities on sales taxes collected from direct pay permit holders,[3] penalties and interests collected on sales taxes and sales taxes collected from out-of-state businesses having Mississippi locations, i.e., "083 Accounts."

¶5.    On November 16, 1999, the Cities of Amory, Belmont, Booneville, Calhoun City, Canton, Corinth, Greenville, Grenada, Gulfport, Houston, Indianola, Jackson, Kosciusko, Newton, Ocean Springs, Pearl, Pontotoc, Ridgeland, Starkville and Waynesboro, each a Mississippi municipal corporation (hereinafter collectively the "Municipalities"), filed a complaint against the Mississippi State Tax Commission and Edward H. Buelow, Jr., in his official capacity as Chairman of the MSTC, seeking declaratory and injunctive relief to require the MSTC and its Chairman to comply with state law concerning the diversion of state sales tax to the Municipalities.[4] On December 16, 1999, the MSTC filed a motion to dismiss stating that: (1) the Municipalities were barred from filing the suit by the doctrine of sovereign immunity and the Mississippi Tort Claims Act; (2) the Municipalities were

---

[3]A direct pay permit holder is a purchaser who is responsible for reporting and remitting the sales tax directly to the State in lieu of payment of the tax to the vendor, thereby relieving the vendor of any liability.

[4]The cities of Amory, Booneville, Pontotoc, Ridgeland, and Starkville are not parties on appeal to this Court.

preempted from filing the suit because the right of such action was only granted to the state auditor; and, (3) the Municipalities failed to state a claim upon which relief could be granted. The MSTC's main basis for these assertions was that the State Treasurer, not the MSTC, was the party responsible for disbursing the funds. On February 2, 2000, the Municipalities amended their first complaint to restate their demand for permanent relief to include that the MSTC be directed to perform all acts as required under Miss. Code Ann. § 27-65-1 *et seq*. (2000) and § 27-3-57 (1999), and on February 16, 2000, the MSTC filed a motion to dismiss the amended complaint.

¶6. On March 7, 2000, the Legislature passed House Bill 987 which was signed by the Governor on the same day. 2000 Miss. Laws ch. 304. House Bill 987 states:

> SECTION 1. The method employed by the State Tax Commission to calculate all payments made to municipalities under the provisions of Section 27-65-75, Mississippi Code of 1972, prior to the effective date of this act, is hereby ratified, approved and confirmed as being the proper method of calculating payments due to all municipalities under the provisions of Section 27-65-75, Mississippi Code of 1972, for all periods prior to the effective date of this act.

> SECTION 2. From and after the effective date of this act, the method of computing payments due to municipalities under the provisions of Section 27-65-75, Mississippi Code of 1972, shall be the same as that utilized by the State Tax Commission prior to the effective date of this act unless the method is changed by legislative act.

> SECTION 3. Any suit brought by a municipality to recover additional payments under Section 27-65-75, Mississippi Code of 1972, in excess of the amounts authorized in this act is hereby abated.

> SECTION 4. This act shall take effect and be in force from and after its passage.[5]

---

[5]2000 Miss. Laws ch. 304, was never codified as part of the official Mississippi Code.

4

¶7.    On April 13, 2000, the MSTC amended its motion to dismiss to include the provisions of H.B. 987 as an additional basis for dismissal. A hearing was held on May 22, 2000, and on November 14, 2000, the trial judge issued a three-page memorandum wherein he stated, inter alia, that he was granting the MSTC's motion to dismiss.  Although the trial judge's memorandum stated only that the Municipalities did not have standing to sue and that H.B. 987 required dismissal, the judge in essence adopted the MSTC's proposed opinion which contained rulings on thirteen separate defenses.[6]

¶8.    By way of this decision, the trial judge granted the MSTC's motion to dismiss finding, that as creatures of the state, the Municipalities lacked standing to bring suit; the Municipalities were barred from bringing suit by the Mississippi Tort Claims Act, s*ee* Miss. Code Ann. §§ 11-46-9(1)(b), (d) & (i) (Rev. 2002); the Municipalities had no authority to bring suit because exclusive authority was vested with the State Auditor, *see* Miss. Code Ann. §§ 27-65-75 & 27-3-57; the Municipalities failed to state a claim upon which relief could be granted because the State Treasurer, who is in charge of disbursing funds, was the

---

[6]The trial judge's 3-page memorandum contained the following language:

> The attorneys for the State Tax Commission may submit to the Court, for its consideration, a proposed opinion/order consistent with these rulings of the Court and with the briefs and arguments contained therein of the State Tax Commission.

The MSTC asserts that this language in the trial judge's memorandum, coupled with the trial judge's additional memorandum language that he had "spent considerable time" studying the parties' briefs, reveals that the trial judge had agreed with the MSTC's position and thus directed that the proposed opinion/order should be drafted consistent with his rulings and MSTC's "briefs and arguments."  On the other hand, the Municipalities assert that the trial court's "virtually verbatim adoption" of the proposed opinion submitted by the MSTC subjects the trial court's opinion to "heightened scrutiny" by this Court. **In re Estate of Grubbs**, 753 So.2d 1043, 1046-47 (Miss. 2000).

5

proper party to this suit, *see* Miss. Code Ann. § 27-3-57; and by passage of House Bill 987, the Municipalities' suit was abated, *see* 2000 Miss. Laws ch. 304.

¶9.     After this January 5, 2001, ruling of the trial judge, the Municipalities, on January 16, 2001, filed a motion to alter or amend the judgment challenging alleged unsupported factual findings and erroneous legal conclusions based thereon; however, the motion to amend was denied. The judge did amend the original judgment to dismiss the complaint with prejudice to hold that the State Auditor would not be precluded from bringing suit on the same subject matter. The Municipalities timely filed their appeal before this Court and raise the following seventeen issues:

> 1. Whether the circuit court erred in granting the MSTC's Motion to Dismiss.
> 2. Whether the circuit court's granting of the MSTC's Motion to Dismiss is contrary to the applicable law in this case.
> 3. Whether the circuit erred by basing its decision to grant the MSTC's Motion to Dismiss on findings of fact and on mixed findings of law and fact which are not supported by the record and which are contrary to the record.
> 4. Whether the circuit court erred in dismissing the Amended Complaint with prejudice.
> 5. Whether the circuit court erred in dismissing the Municipalities' Amended Complaint on the ground that the Municipalities lacked the standing to bring the claims set forth in the Amended Complaint.
> 6. Whether the circuit court erred in dismissing the Municipalities' Amended Complaint on the ground that the relief requested was not authorized by law.
> 7. Whether the circuit court erred in dismissing the Municipalities' Amended Complaint on the ground that the Amended Complaint was a suit for money damages against the State of Mississippi and was thus barred.
> 8. Whether the circuit court erred in dismissing the Municipalities' Amended Complaint on the basis of House Bill 987 passed by the 2000 Mississippi Legislature.
> 9. Whether the circuit court erred in dismissing the Municipalities' Amended Complaint with prejudice, thereby denying the Municipalities any recourse or redress in the Courts of the State of Mississippi for open and ongoing violations of State law by the Tax Commission of which State law the Municipalities are direct and primary beneficiaries.

10. Whether the circuit court erred in dismissing the Municipalities' Amended Complaint on the ground it is barred by statutory and common law sovereign immunity.

11. Whether the circuit court erred in dismissing the Municipalities' Amended Complaint on the ground that the State Auditor has the sole and exclusive authority to challenge determinations of the Tax Commission.

12. Whether the circuit court erred in dismissing the Municipalities' Amended Complaint with prejudice on the ground that it failed to state a claim against the Tax Commission as opposed to the State Auditor.

13. Whether the circuit court erred in dismissing the Municipalities' Amended Complaint on the ground that it is preempted and barred by the statutory scheme of sales tax diversions, as is more fully set forth in Paragraph 33 of the circuit court's Opinion and Judgment.

14. Whether the circuit court erred in dismissing the Municipalities' Amended Complaint on the ground that the Mississippi Legislature has plenary power over all aspects of the government of the State of Mississippi.

15. Whether the circuit erred in determining the Municipalities had no standing to challenge the constitutionality of House Bill 987.

16. Whether the circuit court erred in determining that House Bill 987 does not violate the separation of powers prescribed by the Mississippi Constitution, and in determining that the Mississippi Legislature has "absolute authority" over the issues and claims contained in the Amended Complaint.

17. Whether the circuit court erred in dismissing the Municipalities' Amended Complaint on the ground of the abatement provision of House Bill 987.

For sake of clarity, the issues identified by the Municipalities have been consolidated into two issues for purposes of this opinion:

**I.** **WHETHER THE TRIAL COURT ERRED IN HOLDING THE MUNICIPALITIES DID NOT HAVE STANDING TO FILE SUIT AGAINST THE MSTC.**

**II.** **WHETHER THE TRIAL COURT ERRED IN HOLDING THE PASSAGE OF HOUSE BILL 987 WAS A VALID EXERCISE OF THE LEGISLATURE'S AUTHORITY.**

## DISCUSSION

¶10. A motion to dismiss under M.R.C.P. 12(b)(6) raises an issue of law. *Tucker v. Hinds County*, 558 So.2d 869, 872 (Miss. 1990); *Lester Eng'g Co. v. Richland Water & Sewer*

7

***Dist.***, 504 So.2d 1185, 1187 (Miss. 1987). This Court conducts de novo review on questions of law. ***UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.***, 525 So. 2d 746, 754 (Miss. 1987). The scope of review of a motion to dismiss is that the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim. ***Brewer v. Burdette***, 768 So. 2d 920, 922 (Miss. 2000); ***Overstreet v. Merlos***, 570 So.2d 1196, 1197 (Miss. 1990); ***Grantham v. Miss. Dep't of Corrections***, 522 So.2d 219, 220 (Miss. 1988); ***Lester Eng'g Co.,*** 504 So.2d at 1187; ***Stanton & Assocs., Inc. v. Bryant Constr. Co.***, 464 So.2d 499, 505 (Miss. 1985). This Court employs the same standard on appeal in determining whether a trial court's granting a motion to dismiss was error. ***McFadden v. State***, 542 So.2d 871, 874-75 (Miss. 1989). Though the totality of the record makes doubtful the Municipalities claim of the trial judge's "virtually verbatim adoption" of the MSTC's proposed findings of fact and conclusions of law, this claim is really of no moment inasmuch as this Court has conducted a de novo review of the trial court's actions and has meticulously studied the entire record in this case in reaching today's decision.

I.   **WHETHER THE TRIAL COURT ERRED IN HOLDING THE MUNICIPALITIES DID NOT HAVE STANDING TO FILE SUIT AGAINST THE MSTC.**

¶11.   The Municipalities argue that, as direct beneficiaries of the sales tax diversion statutes and as the ones experiencing the adverse effects of the MSTC's actions, they have standing to file this lawsuit.

¶12. The MSTC argues that the Municipalities do not have a right to sue the State unless the right is specifically expressed by statute. The trial court agreed finding:

> Since there is no statute or constitutional provision specifically granting the Plaintiffs authority to bring this action, the Plaintiffs clearly lack standing to bring this suit against the Mississippi State Tax Commission and the Chairman of the Mississippi State Tax Commission. Due to Plaintiffs' lack of standing to bring the present action, this action should be dismissed.

The MSTC also argues that the exclusive right to file a lawsuit of this nature is held by the State Auditor. Miss. Code Ann. § 7-7-71 (Rev. 2002) states:

> The state auditor, in the discharge of the official duties imposed upon him by Sections 7-7-67 through 7-7-79, shall have full power and authority to examine and investigate the books, records, papers, accounts, and vouchers of any state, county, municipal, or other officer.

Section 7-7-67 states:

> It shall be the duty of the state auditor to investigate the books, accounts, and vouchers of all fiscal officers and depositories of the state and of every county, levee board, and taxing district of every kind, and to sue for, collect, and pay over all money improperly withheld by such fiscal officer or depository. *He has the power to sue and right of action against all such officers and depositories and their sureties to collect any such moneys; but if the delinquency appears by a correct open account on the books of the proper accounting officer or depository, the right of the state auditor to sue shall arise only after he has given thirty (30) days' notice to the delinquent officer or depository to pay over the amounts and he fails to do so.* If he shall examine the books, accounts, and vouchers of any fiscal officer or depository of the state, county, levee board, or taxing district of any kind and find them correct, he shall give a certificate to that effect to such officer and to the board of supervisors of the proper county, or to the proper levee board, or other taxing district.
>
> The state auditor may, in his discretion, also investigate the books, accounts, and vouchers of any municipality, even though such investigation and inspection has been made by a certified public accountant or an accounting firm; and the state auditor shall have the same authority and powers regarding such municipal inspections as granted herein regarding any other investigation.

9

(emphasis added). The trial court again agreed with the MSTC and found that the State Auditor had the exclusive authority to bring an action of this nature.

¶13.   This Court's general rule on standing is as follows:

> Parties may sue or intervene where they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, *see Dye v. State ex rel. Hale,* 507 So.2d 332, 338 (Miss. 1987); *Frazier v. State of Mississippi,* 504 So.2d 675, 691-92 (Miss. 1987); *Belhaven Improvement Association, Inc. v. City of Jackson,* 507 So.2d 41, 45-47 (Miss. 1987), or as otherwise authorized by law, *see, e.g., Canton Farm Equipment Co. v. Richardson,* 501 So.2d 1098, 1105-09 (Miss. 1987); *City of Pascagoula v. Scheffler,* 487 So.2d 196, 198 (Miss. 1986).

*Harrison County v. City of Gulfport*, 557 So.2d 780, 782 (Miss. 1990). "Mississippi law supports the proposition that no sovereign immunity exist[s] when the relief sought [i]s a declaration that a particular statute or action of the State [i]s unconstitutional." *State v. Hinds County Bd. of Sup'rs*, 635 So. 2d 839, 842 (Miss. 1994).

¶14.   The Municipalities clearly have a colorable interest in the subject matter of this litigation concerning statutorily prescribed sales tax diversions. The trial court was incorrect in finding that there must be a specific constitutional provision granting the Municipalities authority to bring this action. The trial court was also incorrect in finding the State Auditor has exclusive authority to bring suits of this nature. The pertinent statutes do give the State Auditor the power to bring these suits. However, the statutes, in no way, bestow exclusive authority to the State Auditor alone.

10

¶15. Because the Municipalities have a colorable interest in the subject matter of this litigation, we find the trial court erred in dismissing this suit on the grounds that the Municipalities lacked standing.

## II. WHETHER THE TRIAL COURT ERRED IN HOLDING THE PASSAGE OF HOUSE BILL 987 WAS A VALID EXERCISE OF THE LEGISLATURE'S CONSTITUTIONAL AUTHORITY.

¶16. The Municipalities next argue H.B. 987 violates the separation of powers doctrine by instructing the judiciary on the interpretation of statutes.[7] The Municipalities contend H.B. 987 is an attempt to enact a measure declaring what the law was before the measure was passed which they state is an improper exercise of legislative power and an improper invasion of judicial power.

> The rule is well settled that the judicial power cannot be taken away by legislative action. Nor may the legislature regulate the judicial discretion or judgment that is vested in the courts. Any legislation that hampers judicial action or interferes with the discharge of judicial functions is unconstitutional....The legislation has no power to direct the judiciary in the interpretation of existing statutes.

16A Am. Jur. 2d *Constitutional Law* § 286, at 209-10 (1998) (footnotes omitted). The Municipalities also state the abatement provision of Section 3 of H.B. 987 is an

---

[7]Art. 1, § 1, Miss. Const., 1890, provides:

> The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.

Art. 1, § 2, Miss. Const., 1890, provides:

> No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.

11

encroachment upon judicial authority. The MSTC, on the other hand, argues that H.B. 987 is a law which passes constitutional muster and does not usurp the power of the judiciary.

¶17.    Although we find the majority of the case law cited by the Municipalities predates our Constitution, the crux of their argument is that the Constitution has granted the duty of construing past laws to the courts. "[I]t is not for the legislature to construe laws for the past. That duty is by the constitution devolved upon the courts. The legislature may determine what the law shall be, but the courts must say what the law has been." *McCulloch v. Stone*, 64 Miss. 378, 395, 8 So. 236, 239 (1886). The Municipalities argue that this Court has held numerous statutes unconstitutional in violation of the doctrine of separation of powers. *See Presley v. Miss. State Highway Comm'n*, 608 So. 2d 1288 (Miss. 1992); *Newell v. State*, 308 So. 2d 71 (Miss. 1975); *Loftin v. George County Bd. of Educ.*, 183 So. 2d 621 (Miss. 1966). The Municipalities also state that this Court has declared legislative attempts to encroach upon the power of the executive branch to be unconstitutional. *See Alexander v. State ex rel. Allain*, 441 So. 2d 1329 (Miss. 1983).

¶18.    The Municipalities additionally argue that Miss. Code Ann. §§ 27-65-75 and 27-3-57 confer existing rights arising from prior transactions to the Municipalities. Those alleged existing rights are at issue in the present litigation which was commenced prior to the passage of H.B. 987. The Municipalities also contend Section 3 of H.B. 987, which declares, "[a]ny suit brought by a municipality to recover additional payments under § 27-65-75, Mississippi Code of 1972, in excess of the amounts authorized in this act is hereby abated[,]" is another egregious attempt at legislative encroachment upon judicial authority.

The Municipalities cite several cases where this Court has held it unconstitutional for the Legislature to pass a statute declaring an action abated. In *Miller v. Hay*, 143 Miss. 471, 109 So. 16 (1926) (*Miller II*), this Court held unconstitutional as a usurpation of judicial power, a statute in which the Legislature declared a suit brought by the state revenue agent for the use and benefit of Washington County against certain parties was abated. The Municipalities find the following language from *Miller II* persuasive:

> The separation of the legislative, executive, and judicial powers of the state and their allotment to separate and distinct departments is so fundamental under our system of government that it cannot be violated even by an ordinance of a constitutional convention. A fortiori it cannot be violated by one of the departments to which one of the powers has been committed.
>
> The power vested in the Legislature by these sections of the Constitution, and the only power which it can exercise, is the legislative power, so that the question for decision is simply this, Is the power which the Legislature sought to exercise by the enactment of the statute here in question legislative? Whether or not a suit in equity or an action at law shall abate, that is, whether all proceedings therein shall be suspended, unless and until the cause for the suspension be removed, as well as whether a suit or action that has been abated shall be revived, are judicial questions to be determined by the court in which the suit or action is pending, and are so universally held to be such that it would be supererogatory to cite authority therefor. The declaration in this statute that the suit therein referred to "be and the same is hereby abated," and the permission therein given the board of supervisors to revive it, are an attempt on the part of the Legislature to interfere in a pending judicial controversy by the exercise of a power which the Constitution vests solely in the courts, and are therefore void.

109 So. at 17. Through a legislative enactment, the Legislature was attempting to take away the right of the revenue agent to bring a suit and place that right with the Board of Supervisors. 109 So. at 17-18. The Constitution states the power to abate a suit and revive

it in the name of another lies solely in the judiciary. 109 So. at 18. *See also* Miss. Const. art.

6, § 144. Additionally, in ***Miller II***, this Court held:

> *If it be conceded that the Legislature has the power to withdraw from the revenue agent the right to prosecute a particular suit, in which connection see **Miller, Revenue Agent, v. Globe-Rutgers Fire Insurance Co.** (Miss.) 108 So. 180, it has not the right to accomplish that object by exercising a power* which the Constitution vests solely in another department of the government, and the means by which to further prosecute a particular suit is here sought to be withdrawn from the revenue agent, under this construction of the statute, to wit, the abatement of the suit and its revival in the name of another, are committed by the Constitution to the judicial, and not to the legislative, department of the government. Granted that an object sought to be accomplished by one of the departments of the government is within the power allotted to it, the means by which it seeks to accomplish that object must also be within the power allotted to it. In other words, a constitutional object must be accomplished by constitutional means.

109 So. at 17-18 (emphasis added).

¶19.     ***Miller II*** was decided in June 1926 and was cited three months later in ***Miller v. Johnston***, 144 Miss. 201, 109 So. 715 (1926) (***Miller III***).[8] This Court again held "the Legislature was without power to abate pending suits filed by the former state revenue agent." 109 So. at 720.  In ***Miller III***, the Legislature again was attempting to abate a suit and revive it in the name of someone else. The Court found it was the duty of the state revenue agent to investigate each pending suit which was filed by his predecessor. 109 So. at 720. If the agent's investigation found the suit to be just, the agent was under a duty to revive the predecessor's suit. 109 So. at 720. The statute passed by the Legislature sought

---

[8]The Municipalities also cite ***Miller v. Davis***, 109 So. 721 (Miss. 1926) (***Miller IV***); however, since this case was a companion case to ***Miller III***, and the two-paragraph ***Miller IV*** decision stated that the Court's decision was governed by the opinion rendered in ***Miller III***, there is no need to refer further to ***Miller IV***.

14

to take away the power of the revenue agent to bring these suits and provide that power to the attorney general. 109 So. at 719. The Court in *Miller III* followed the ruling in *Miller II* and found this statute to be unconstitutional. 109 So. at 720. However, these facts do not exist in the case sub judice. The Legislature is not attempting to take away the power of one only to revive that power in an altogether different agent. The Legislature is instead abating a suit brought by municipalities to recover additional payments under § 27-65-75 without reviving the right to bring the same suit in another agent.[9]

¶20.    We find it interesting that the Municipalities fail to cite a case which was decided only fifty (50) days before *Miller II*.  In *Miller v. Globe-Rutgers Fire Ins., Co.*, 143 Miss. 489, 108 So. 180 (1926) (*Miller I*), this Court held a statute which abated pending suits constitutional.

> The validity of the second statute is challenged by the revenue agent on the ground that it violates sections 1, 2, and 100 of the state Constitution.[10] The first two of these sections deal with the distribution of powers among the three departments of state government, and the argument is that the effect of the statute here under consideration is to abate pending suits, and therefore the Legislature, by so providing, has usurped power which properly belongs to the judicial department. Section 100 of the Constitution prohibits the Legislature from remitting, releasing, postponing, or diminishing the obligation or liability

---

[9]Even the *Miller II* Court in essence conceded that the Legislature had "the power to withdraw from the revenue agent the right to prosecute *a particular suit*." 109 So. at 17-18 (emphasis added).

[10]Art. 1, §§ 1, 2, Miss. Const. 1890, are quoted in n. 7, supra.  Art. 1, § 100, Miss. Const. 1890, states:

> No obligation or liability of any person, association, or corporation  held or owned by this state, or levee board, or any county, city, or town thereof, shall ever be remitted, released or postponed, or in any way diminished by the legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value; but this shall not be construed to prevent the legislature from providing by general law for the compromise of doubtful claims.

15

of any person, association, or corporation held by the state and its political subdivisions, and the argument is that this statute not only postpones, but in effect releases the obligation of the appellees to pay the state the penalties alleged to be due by them to the state for their alleged violation of the state's Anti-Trust Laws.

*While the effect of this statute is to abate pending suits brought by the revenue agent under the anti-trust statutes, the abatement thereof results, not from any attempt on the part of the Legislature to exercise judicial power, but because of the exercise by the Legislature of its purely legislative power of designating the duties to be discharged by a state officer. See section 103 of the state Constitution.*

***

The statute is valid, and, since it withdraws from the revenue agent power to further prosecute this suit, the motion to dismiss the appeal must be sustained.

108 So. at 181 (emphasis added).

¶21.    At first blush, it would appear that in *Miller II* and *Miller III*, when compared to the decision in *Miller I*, are in conflict. However, a meticulous comparison of these three cases reveals that these they are not in any way inconsistent. The first indication of this is that the majority opinions in *Miller I* and *Miller II*, which were handed down only fifty (50) days apart in 1926, are authored by the same justice (Chief Justice Smith). Additionally, there can be no mistaking the fact that Chief Justice Smith and the *Miller II* Court were well aware of their decision only 50 days earlier in *Miller I* because *Miller II* makes specific reference to *Miller I*. What then is the difference between *Miller I* as compared to *Miller II* and *Miller III*, to cause the *Miller I* Court to conclude that the legislature's passage of a law which had the effect of abating pending suits *was not* a legislative usurpation of the constitutional authority granted to the judiciary, while the *Miller II* and *Miller III* Courts concluded that the legislature's passage of a law which had the effect of abating pending suits *was* a

16

legislative usurpation of the constitutional authority granted to the judiciary? The critical difference is this. In *Miller II* and *Miller III*, the Legislature attempted to usurp its powers vested by the Constitution by abating litigation brought by a revenue agent and reviving the same litigation in the name of another. This power to abate a suit yet revive it in the name of another lies solely in the judiciary. On the other hand, just like the case sub judice, *Miller I* solely withdraws the power to prosecute a suit without reviving the suit in the name of another.

¶22.    Continuing with this comparison of the *Miller* decisions, in *Miller II*, the state revenue agent, W. J. Miller, had initiated a suit in Washington County to recover certain contractual debts. While the suit was pending, the Legislature enacted a statute which provided:

> Be it enacted by the Legislature of the state of Mississippi, that the suit pending on the docket of the chancery court of Washington county (sic), Mississippi, styled W. J. Miller, state revenue agent for the use and benefit of Washington county (sic), Mississippi, against J. C. Hay and others, be and the same is hereby abated; but such suit may be revived by the board of supervisors of Washington county (sic), Mississippi, in which event all contracts made by the state revenue agent in regard to such litigation shall be complied with and carried out by the said board of supervisors.

1926 Miss. Laws, ch. 290, cited at 109 So. at 17. In specifically referring to its then 50-day old decision in *Miller I*, the *Miller II* Court clearly distinguished *Miller I* by stating "[i]f it be conceded that the Legislature has the power to withdraw from the revenue agent the right to prosecute a particular suit," the Legislature did not have the right to abate the lawsuit and revive it "in the name of another."

17

¶23.    In *Miller III*, the plaintiff/appellee, Thomas H. Johnston (Johnston) was an attorney for Stokes V. Robertson (Robertson), the predecessor of state revenue agent, W. J. Miller (Miller), and Johnston had been employed by Robertson, in his capacity as then-revenue agent, to file suits to collect outstanding privilege taxes and income taxes due the state. Johnston's lawsuit in *Miller III* was to collect attorneys fees based on an agreement between Johnston and Robertson.  During this litigation, the Legislature enacted a law which would take from the revenue agent the right to bring these type suits and instead confer that right upon the state Attorney General.  In following its decision in *Miller II*, the *Miller III* Court held the statute to be unconstitutional, but in so doing, the *Miller III* Court specifically referred and distinguished its decision in *Miller I*:

> In the case before [the court], the Legislature has not undertaken to remove the power existing in the revenue agent to prosecute suits of the character involved here, and it is clearly different from the case of *Miller v. Globe-Rutgers Fire Ins. Co.* (Miss.), 108 So. 180; *Johnston v. Reeves*, 112 Miss. 227, 72 So. 925, in which cases the power of the revenue agent to bring particular suits was taken from him by statute.

109 So. at 720.

¶24.    In sum, *Miller I* is obviously still good law and was in no way overruled or compromised by *Miller II* and *Miller III,* both of which specifically mention and distinguish *Miller I*, which is factually consistent with the case before us today.  In both *Miller II* and *Miller III*, the Legislature passed laws which not only abated the pending litigation, but also revived the suits in the name of another (one in the name of the Washington County board of supervisors, and the other in the name of the state Attorney General).  However, just as

18

in *Miller I*, today's litigation was abated by legislative enactment which did not revive the litigation in the name of another.

¶25. We simply do not agree with the Municipalities' argument that H.B. 987 is an attempt by the Legislature to usurp the powers of the judiciary. We do, however, agree with the MSTC's argument that H.B. 987 is a valid, constitutional general law. Legislative actions are presumed constitutional. ***Burrell v. Miss. State Tax Comm'n***, 536 So. 2d 848, 858 (Miss. 1988); ***Miss. Power Co. v. Goudy***, 459 So. 2d 257, 263 (Miss. 1984). The MSTC correctly argues that under Mississippi case law, H.B. 987 should be given the full effect of its clear purpose which is to exclude direct pay, interest and penalties and out-of-state or "083" collections from the municipalities' distributions. The MSTC states the Legislature clearly intended to keep in effect the known exclusion of these special and unusual categories of revenue by the MSTC from municipal distribution. Indeed, the MSTC has employed this method for over thirty years.

¶26. The MSTC argues the Legislature clearly intended H.B. 987 to apply retroactively, as well as prospectively, by the language in Section 1, "for all periods prior to the effective date of this act." The MSTC cites several cases where this Court has upheld and affirmed the retroactive application of legislation.

> In a long line of cases, this Court has followed the rule that, in the interpretation of statutes, they will be construed to have a prospective operation only, unless a contrary intention is manifested by the clearest and most positive expression. ***Hooker v. Hooker***, 18 Miss. (Smedes & M) 599 (1848); ***Brown v. Wilcox***, 22 Miss. (14 Smedes & M) 127 (1850); ***Richards v. City Lumber Co.***, 101 Miss. 678, 57 So. 977 (1912); ***Power v. Calvert Mortgage Co.***, 112 Miss. 319, 73 So. 51 (1916); ***State ex rel. Knox v. Union Tank Car Co.***, 151 Miss. 797, 119 So. 310 (1928); ***Bell v. Union & Planters***

19

> *Bank & Trust Co.*, 158 Miss. 486, 130 So. 486 (1930); *Mississippi Central Railroad Co. v. City of Hattiesburg*, 163 Miss. 311, 141 So. 897 (1932); *City of Lumberton v. Schrader*, 176 Miss. 272, 168 So. 77 (1936); *Jefferson Standard Life v. Dorsey*, 178 Miss. 852, 173 So. 669 (1937); *United States Fidelity & Guaranty Co. v. Maryland Casualty Co.*, 191 Miss. 103, 199 So. 278 (1941); *McCullen v. State ex rel. Alexander*, 217 Miss. 256, 63 So.2d 856 (1953); *Klaas v. Continental Southern Lines*, 225 Miss. 94, 82 So.2d 705 (1955); *Horne v. State Building Commission*, 233 Miss. 810, 103 So.2d 373 (1958).
>
> This established rule of construction has been phrased in other ways by the above cases: A statute will not be given retroactive effect unless it is manifest from the language that the legislature intended it to so operate. It will not be construed as retroactive unless the words admit of no other construction or meaning, and there is a plain declaration in the act that it is. In short, these cases illustrate a well-settled attitude of statutory interpretation: A preference that it be prospective only, and a requirement that there should be a clearly expressed intent in the act to make it retrospective.

*Mladinich v. Kohn*, 186 So.2d 481, 483 (Miss. 1966)(citations omitted). In *Burrell v. Miss. State Tax Comm'n*, 536 So. 2d 848, 859-60 (Miss. 1988) and *State ex rel. Pittman v. Ladner*, 512 So. 2d 1271, 1277 (Miss. 1987), this Court allowed the retroactive application of statutes, amendments and rules.

¶27. In *Burrell*, taxpayers brought an action seeking to declare a statutory and constitutional amendment null and void. The taxpayers argued House Bill 388 could not be retroactively validated because laws only operate prospectively. 536 So. 2d at 859. This Court disagreed with the taxpayers' argument finding "legislative enactment of House Bill No. 388 was so integrally related to the adoption of House Concurrent Resolution 41, so that the latter, once ratified, ought be taken as breathing legal life into the former." 536 So.2d at 860.

20

¶28.   In *Ladner*, school board members who allegedly violated a statutory three competitive bid rule then in effect were sued by the Attorney General and the State Auditor. 512 So. 2d at 1272-73. At the time the school board officials awarded the contract, the law required at least three bids be received for all work done on rebuilding and repairing the school. *Id*. On January 1, 1981, after the lawsuit was initiated, the Legislature repealed the three bid requirement.   *Id.* The school board members argued the law should apply retroactively, despite the fact that the previously law prohibited their actions.   *Id.*  This Court agreed and held the State had no enforceable rights under the now repealed rule.   *Id.*   In *Ladner*, we quoted the *Independent Linen* rule,[11] which states:

> [T]he effect of a repealing statute is to abrogate the repealed statute as completely as if it had never been passed, and that a statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the repealing or modifying statute contains a saving clause.
>
> The result of this rule is that every right or remedy created solely by the repealed or modified statute disappears or falls with the repealed or modified statute, unless carried to final judgment before the repeal or modification,-- save that no such repeal or modification shall be permitted to impair the obligation of a contract or to abrogate a vested right.

512 So.2d at 1275 (citations omitted).

¶29.   The MSTC argues no right had vested in the municipalities prior to the enactment of H.B. 987.  In *Ladner*, this Court explained a vested right as a right that must be a "contract right, a property right, or a right arising from a transaction in the nature of a contract which

---

[11]*Stone v. Independent Linen Serv. Co.*, 212 Miss. 580, 586-87, 55 So.2d 165, 168 (1951).

has become perfected to the degree that it is not dependent on the continued existence of the statute." 512 So. 2d at 1275-76 (citation omitted).

> What is necessary to enable the State of Mississippi to proceed under a repealed statute is that the right the State seeks to assert be based upon some contract, property or other vested right, that the right have being as a right notwithstanding the statute's nonbeing.

> The *Independent Linen* rule no doubt turns heads when it suggests the nonexistence of that which we know existed in 1980, if for no other reason, because we have before us the printed pages which were available in that year. Of course, the three bid rule had existence. Prior to January 1, 1981, it was susceptible of judicial enforcement. What the *Independent Linen* rule means is this. The legislature of this state, as the principal exponent of the public policy of this state, has declared that the three bid requirement will no longer obtain in emergency public works circumstances. Because the statute has been changed, and because this Court is obliged to act consistent with a rational reading of the legislative declaration, we have as a matter of reason, precedent and choice determined that we should stay our hand from enforcement of that which has been repealed. Put more specifically, we accord a prior consideration to the public policy pronouncement of the state qua legislature, wholly interdicting the actions of the State qua its attorney general and its auditor.

512 So.2d at 1276.

¶30.    The MSTC disagrees with the Municipalities' reliance on *Miller II* and *Miller III*. The MSTC contends those cases must be read in the context of *Ladner* and its progeny which affirm the Legislature's power to enact retroactive, abating legislation. The MSTC cites several cases where this Court has upheld and affirmed the retroactive application of legislation, even when the legislation would abate litigation pending prior to the legislation becoming adopted. *See USPCI of Miss., Inc. v. State ex rel. McGowan*, 688 So. 2d 783, 786-87 (Miss. 1997); *City of Clarksdale v. Miss. Power & Light Co.*, 556 So. 2d 1056, 1057-58 (Miss. 1990).

22

¶31.    In *City of Clarksdale v. Miss. Power & Light Co.*, the city filed a petition to condemn electrical facilities. *Id*. The trial judge dismissed the original suit because the amended statute stated that "prior to a municipality exercising the power of eminent domain against a utility the certificate of public convenience and necessity held by the utility had to be cancelled by the [Public Service Commission]" *Id*. Because the PSC had not acted on the utility's certificate of public convenience and necessity, the City's petition was dismissed. *Id*. This Court affirmed finding a clear legislative intent for the amended statute to apply to pending suits. *Id*.

¶32.    In *USPCI of Miss., Inc.*, a county resident filed a suit charging the governor did not follow proper procedures in connection with the proposed construction of a hazardous waste treatment facility. 688 So.2d at 785. While the suit was pending, the Legislature amended Miss. Code Ann. § 23-43-5 to specifically exclude the governor from these requirements. In *USPCI*, this Court held:

> "When cases are in the bosom of this Court and there is involved a statute that is modified prior to a final decision of this Court, we take that modification into consideration." *Bell v. Mitchell*, 592 So.2d 528 (Miss. 1991)(citing *Parker v. Bailey*, 437 So.2d 33 (Miss. 1983)).
>
> This Court has also stated that an amendment to a statute should be treated as though it had been a part of the original statute. *City of Clarksdale v. Miss. Power & Light Co.*, 556 So.2d 1056, 1057 (Miss. 1990).
>
> As a result, the Governor's Office is not an agency within the meaning of the APL.[12] Further, the Governor did not have to comply with the requirements

---

[12]The Administrative Procedures Law, Miss. Code Ann. §§ 25-43-1 to -19 (Rev. 1999).

of the APL in adopting his proposed CAP[13] because it is not a "rule" within the meaning of the APL.

688 So 2d at 787.

¶33.    The MSTC also argues that the *Miller II* and *Miller III* cases cited by the Municipalities do not apply to the case sub judice because the legislation which attempted to abate the state revenue agent's suits did not refer to the pre-existing statute authorizing the lawsuit. H.B. 987 specifically refers to Miss. Code Ann. § 27-65-75 and states that its application has been correct.

¶34.    The Municipalities next argue that in an attempt to delegate legislative authority to the MSTC, H.B. 987 violates the non-delegation doctrine. The Municipalities state because H.B. 987 sets no rules or standards to guide the MSTC in their calculations regarding diversions due municipalities, the bill is an attempt to give the MSTC, a state administrative agency, unbridled authority in their calculations. Because of this arbitrary and uncontrolled discretion, the Municipalities argue H.B. 987 is unconstitutional.

> The traditional theory is that the legislature cannot delegate power to make law, but may delegate power to determine facts on which the law makes its own action depend. *Clark v. State*, 169 Miss. 369, 152 So. 820 (1934); *Abbott v. State*, 106 Miss. 340, 63 So. 667 (1913). Legislative power or functions may be delegated to an administrative agency only in the limited sense that the statute must set forth the legislative decision and must prescribe adequate standards or rules for the agency's guidance. It cannot be vested with an arbitrary and uncontrolled discretion.

*State v. Allstate Ins. Co.*, 231 Miss. 869, 882, 97 So. 2d 372, 375 (1957).

---

[13]Capacity Assurance Plan.

¶35. The Municipalities argue H.B. 987 purports to give the MSTC broad discretion in determining what is and is not covered by municipal diversion. The Municipalities state the governing statutes declare each municipality is to receive a diversion of 18½ % of sales taxes collected on all business activities, except for specified activities, conducted within the municipality. The Municipalities argue that a statute which confers such absolute and arbitrary discretion, without any guiding standard, should be declared unconstitutional by this Court.

¶36. This Court disagrees with the reasoning of the Municipalities and finds the argument of the MSTC more compelling. The MSTC asserts an administrative agency is afforded deference by the judiciary in the "construction of its own rules and regulations and the statutes under which it operates." *McDerment v. Miss. Real Estate Comm'n*, 748 So. 2d 114, 118 (Miss. 1999)(citing *Miss. State Tax Comm'n, v. Mask*, 667 So.2d 1313, 1314 (Miss. 1995)). Miss. Code Ann. § 27-65-93[14] authorizes the Commissioner to promulgate rules and regulations deemed necessary to enforce the provisions of the statute. The MSTC argues discretion was granted and is expected by the legislation.

¶37. Finally, the Municipalities argue H.B. 987 constitutes an improper amendment to Miss. Code Ann. § 27-65-75. The Municipalities contend Sections 1 and 2 of H.B. 987 seek to amend the plain language of Miss. Code Ann. §§ 27-65-75 and 27-3-57 by ratifying,

---

[14]Miss. Code Ann. § 27-65-93 (Rev. 2000), states in pertinent part:
The commissioner shall, from time to time, promulgate such rules and regulations, not inconsistent with the provisions of the sales tax law, for making returns and for the ascertainment, assessment and collection of the tax imposed by said law as he may deem necessary to enforce its provisions; and, upon request, he shall furnish any taxpayer with a copy of such rules and regulations.

approving and confirming the method previously employed by the MSTC to calculate sales tax revenue to be diverted to municipalities and by stating this method is to be utilized in the future. Because H.B. 987 does not insert the purported statutory modifications at length, the Municipalities argue H.B. 987 is a violation of Art. 4, § 61, Miss. Const, 1890, which states "[n]o law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length."

¶38. The Municipalities assert because there is no definition of the method employed by the MSTC to calculate the payments, no one can be certain what method has been employed or if the MSTC is complying with the requirements of law. The Municipalities argue the calculations made by the MSTC cannot be subjected to fair legislative scrutiny when they are ratified by reference en masse. Additionally, the Municipalities argue that because H.B. 987 violates the Constitution, the bill cannot lawfully govern calculations made by the MSTC after the effective date of the measure.

¶39. The MSTC asserts the Municipalities' argument that the statute was "amended by reference" fails because the Legislature, by its own language in H.B. 987, did not amend Miss. Code Ann. § 27-65-75, but instead simply affirmed the statute and the administration thereof. This Court has held a statute may be amended by implication. *Lamar County Sch. Bd. v. Saul*, 359 So. 2d 350, 353 (Miss. 1978). "Section 61 of the Mississippi Constitution of 1890 has no reference to amendment by implication when the amending statute is complete within itself." *Id.* (citing *Hart v. Backstrom*, 148 Miss. 13, 113 So. 898 (1927)). H.B. 987 is complete in itself. Municipalities will not be entitled to receive any additional

money from collections made prior to the passage of H.B. 987, and the method of calculation will be the same as it has been since 1968. H.B. 987 also makes it clear that the discretion afforded to the MSTC is limited to the previous method of calculation, and any different calculation would be barred.

¶40. For those who might experience some consternation over whether today's decision somehow erodes the independence of the judicial branch of state government, it should be remembered that municipalities are but creatures of the state and they possess only such power as conferred upon them by statute. Miss. Code Ann. § 21-17-5(2) (Rev. 2000). This includes the right of the Legislature to determine the amount of sales taxes which will be diverted to the municipalities of this State. This concept should hardly be a shock to anyone. Art. 4, § 88, Miss. Const., 1890 provides:

> The legislature shall pass general laws, under which local and private interest shall be provided for and protected, and under which cities and towns may be chartered and their charters amended, and under which corporations may be created, organized, and their acts of incorporation altered; and all such laws shall be subject to repeal or amendment.

Miss. Code Ann. §§ 21-1-9 & 21-17-9 designate the various forms of government and provide for charter amendments and the governing authority's initiative, respectively.

¶41. Citing a long line of cases, this Court, in *Peterson v. City of McComb City*, 504 So.2d 208, 209 (Miss. 1987), reiterated the axiom that "[i]n Mississippi, a municipality is a 'creature' of the State, possessing only such power as may be granted by statute." *See also Adams v. Kuykendall*, 83 Miss. 571, 35 So. 830 (1904). It necessarily follows that of the three branches of state government, the legislative branch is the one possessing the

constitutional and statutory authority to not only divert sales taxes to the various municipalities, but to also establish exemptions to the sales tax diversions. This was obviously done in 1968, and such action had evidently remained unchallenged until the present litigation. With matters involving the collection, expenditure and disbursement of the taxpayers' monies, we must afford great deference to that branch of state government vested with clear constitutional and statutory responsibilities.

¶42. Since 1968, the Legislature has repeatedly convened and approved state budgets and revenue bills. The MSTC argues, and we agree, that because the Legislature has not altered a continuously standing sales tax regulation, the Legislature intended the same finding as the MSTC's regulation. *See Brady v. Getty Oil Co.*, 376 So. 2d 186, 191 (Miss. 1979). This Court has held the following:

> Under all constitutional governments recognizing three distinct and independent magistracies, the control of the purse strings of government is a legislative function. Indeed, it is the supreme legislative prerogative, indispensable to the independence and integrity of the Legislature, and not to be surrendered or abridged, save by the Constitution itself, without disturbing the balance of the system and endangering the liberties of the people. The right of the Legislature to control the public treasury, to determine the sources from which the public revenues shall be derived and the objects upon which they shall be expended, to dictate the time, the manner, and the means both of their collection and disbursement, is firmly and inexpugnably established in our political system.

*Colbert v. State*, 86 Miss. 769, 39 So. 65, 66 (1905).

¶43. The power of judicial review includes the power to declare acts of the Mississippi Legislature to be unconstitutional. *Estate of Smiley*, 530 So.2d 18, 21 (Miss. 1988). *See Alexander v. State ex rel. Allain*, 441 So.2d at 1347. "Legislative acts are, however, cloaked

28

with a presumption of constitutionality, and unconstitutionality must appear beyond reasonable doubt." *Estate of Smiley*, 530 So. 2d at 21-22 (citing *Mississippi Power Co. v. Goudy*, 459 So.2d at 263; *Anderson v. Fred Wagner & Roy Anderson, Jr., Inc.*, 402 So.2d 320, 321 (Miss. 1981)). This Court has previously discussed the presumption of a statute's validity, holding:

> We adhere here to the rule that one who assails a legislative enactment must overcome the strong presumption of validity and such assailant must prove his conclusions affirmatively, and clearly establish it beyond a reasonable doubt. All doubts must be resolved in favor of validity of a statute. If possible, a court should construe statutes so as to render them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity.

*Loden v. Miss. Pub. Serv. Comm'n*, 279 So.2d 636, 640 (Miss. 1973) (citations omitted).

This Court has also held:

> We recognize that it is not for the courts to decide whether a law is needed and advisable in the general government of the people. That is solely a matter for the wisdom of the Legislature. But, it is our duty to construe the law and apply it to the case presented, and determine whether the Constitution of this State authorizes the legislation.

*Moore v. Grillis*, 205 Miss. 865, 888, 39 So.2d 505, 509 (1949).

¶44. After all, as already pointed out, Miss. Code Ann. § 27-3-57 provides that all funds collected by the MSTC are public funds and shall be promptly deposited in the state treasury and shall be disbursed by the State Treasurer according to law. Yet, the Municipalities, through their pleadings, would have the trial court, and ultimately this Court, order the MSTC to disburse to all the municipalities of this State a recalculated amount of sales tax diversions which "should have been made over the past thirty (30) years." As mentioned

early on in this opinion, this suit is not just one seeking declaratory and injunctive relief, it also seeks sales tax money, and lots of it. As the MSTC correctly sets out in its brief, the remedy for the Municipalities is available through the Legislature via the political process.

¶45. The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. *T.M. v. Noblitt*, 650 So.2d 1340, 1345 (Miss. 1995). We find the Municipalities will be unable to prove beyond a reasonable doubt any set of facts in support of their claim as to the unconstitutionality of H.B. 987. Accordingly, we find H.B. 987 is a valid exercise of the Legislature's constitutional authority. Pursuant to Sections 3 and 4 of H.B. 987, the pending litigation must be abated.

¶46. Having addressed the issues concerning standing and the constitutionality of H.B. 987, we deem it unnecessary to address the remaining assignments of error as asserted by the Municipalities.

## CONCLUSION

¶47. This Court holds that the trial court erred in finding that the Municipalities lacked standing to file this lawsuit. However, this Court finds that the trial judge did not err in granting the MSTC's motion to dismiss as the Municipalities failed to state a claim upon which relief could be granted. The legislative enactment of H.B. 987 was a valid exercise of the Legislature's constitutional authority; and therefore, the pending suit must be abated. In reaching this decision, we are ever mindful of our constitutional responsibility to zealously guard against intrusion by one branch of state government into the affairs of another branch of state government. Were we to be of the opinion today that the

Legislature's passage of H.B. 987 amounted to a usurpation of the authority of the judicial branch of state government, we would unhesitatingly so find. However, for the reasons herein stated, we are firmly convinced that the judgment of the trial court must be affirmed.

¶48. **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER AND COBB, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION TO FOLLOW. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. EASLEY, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶49. The majority's finding that this action initiated by the municipalities was properly dismissed by the Circuit Court of Hinds County is totally erroneous. I would find that H.B. 987 enacted six (6) months after this lawsuit was commenced should not be applied retroactively. Furthermore, this Court should not selectively choose which statutes it will apply retroactively.

¶50. In finding that this suit was properly dismissed due to the enactment of H.B. 987, the majority relies on a line of cases which state that "in the interpretation of statutes, they will be construed to have prospective operation only, unless a contrary intention is manifested by the clearest and most prospective expression." (citations omitted). However, this statement must be read in light of the whole statement by this Court. In *Richards v. City Lumber Co.*, 101 Miss. 678, 679, 57 So. 977, 978 (1912) this Court addressed whether the enactment of Chapter 135 of the Laws of 1910 on April 16, 1910, which created the defense of contributory negligence was to apply to a suit which was commenced on January 12,

1911, for an injury which occurred on March 30, 1910, some sixteen days before the enactment of the statute. This Court's full statement regarding retroactive application of statutes was as follows:

> The rule is fundamental, in the construction of statutes, that they will be construed to have a prospective operation, unless the contrary intention is manifested by the clearest and most positive expression, and, further, that such a construction should be placed upon the statute in order to preserve, if possible, its constitutionality; that the Legislature has no power to take away vested rights, in order to create a cause of action out of an existing transaction, for which there was at the time of its occurrence no remedy; nor can it destroy a valid defense to an action existing before the enactment of the statute. These principles are fundamental, and require the citation of no authorities to support them.

*Id.* This Court ultimately found that the contributory negligence statute was not to apply retroactively. *Id*. Viewed in its full context this Court's holding suggests that rights and defenses which are at issue in the judicial system should not be retroactively eliminated or created by the Legislature. Just as this Court has found that the Mississippi Tort Claims Act does not apply retroactively, ***Boston v. Hartford Acc. & Indem. Co.***, 822 So.2d 239, 245 (Miss. 2002), so too should this Court find that any statute eliminating or limiting a right which has already been asserted is unconstitutional. Additionally, as illustrated in the majority's rendition of numerous opinions where this Court has in one breath applied a statute retroactively and just shortly thereafter in another opinion held a statute not to apply retroactively, this Court should not selectively determine the retroactive effect of statutes.

¶51. Furthermore, the majority overlooks a provision of this State's Constitution, which is directly on point. Article 4, §100 of the Mississippi Constitution of 1890 expressly limits the authority of the Legislature:

32

> No obligation or liability of any person, association, or corporation held or owned by this state, or levee board, or any county, city, or town thereof, shall ever be remitted, released or postponed, or in any way diminished by the legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value; but this shall not be construed to prevent the legislature from providing by general law for the compromise of doubtful claims.

The law is clear that the State cannot skirt around its obligation to pay these municipalities the tax revenue rightly owed to them. These small towns and cities are without a major revenue source and desperately need these tax dollars to stay afloat financially. They are unable by law to impose any other sales tax or tariff to satisfy their cash flow problems. Their citizens are being disenfranchised because the monies owed to their municipalities and them are being cut off by the Legislature's unconstitutional termination of this lawsuit. This Court should not sit by and allow these municipalities to languish in debt, while the State evades its legal obligations and duties. Therefore, I would reverse and remand for further proceedings.

¶52.    For these reasons, I dissent.

**DIAZ, J., JOINS THIS OPINION.**